UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x   08 CIV 3533 (RWS)

MINMETALS SHIPPING & FORWARDING CO. LTD.,
                                    Plaintiff,

                                                                                         **DECLARATION OF**
   - against -                                        **MATHIAS VOGT**
                                                                                         **PURSUANT TO**
HBC HAMBURG BULK CARRIERS,            **28 U.S.C. § 1746**
GMBH & CO. KG,
                                    Defendant.
----------------------------------------------------------x

       MATHIAS VOGT declares and says as follows:

       1.     I am the Operations Manager of Defendant HBC HAMBURG BULK CARRIERS GMBH & CO. KG (hereinafter "HBC"). I submit this Declaration in support of HBC's Motion to vacate the maritime attachment and garnishment entered against it in the captioned action.

       2.     HBC is concerned that the restraint of its property, including wire transfers passing through New York, will pose a disruption to HBC's business by leading to the unwitting breach of contracts, with consequent damages to HBC's reputation, and will result in an unnecessary expenditure of legal expenses.

### Corporate Background

       3.     HBC was initially established as a German corporation in 1999. In 2001 the company was converted from a corporation to a German limited partnership.

       4.     HBC is a substantial company with a strong and solid reputation in the industry.

       5.     HBC is a leading provider of ocean-going transportation for bulk cargoes. In providing this service HBC charters (leases) ships from vessel owners for a set period of time and

subsequently sub-charters those ships to other companies to carry cargo either on a single voyage basis for which HBC collects freight or on a time basis for which HBC collects hire.

6.  HBC has chartered more than 750 vessels during the years 2000-2008 and performed more than 880 voyages out of which 150 voyages were related to the United States. In addition, from 2000 to date, HBC has operated numerous vessels as commercial managers for other shipowners.

7.  Worldwide, HBC earned revenues of approximately $798 million gross in the years 2000 – 2008. Of this figure, approximately $87,6 million gross was earned as a result of doing business with United States based shippers, receivers, and charterers.

### New York Contacts

8.  From shortly after its formation in 1999, HBC has regularly conducted business in New York.

9.  In arranging to charter / lease the ships from their owners, HBC has utilized the services of New York-based ship brokers including Steel Traders Shipping Ltd. of Nyack, New York, Steel Traders Chartering of Irvington, New York, Lalemant (USA) Inc. of Tarrytown, New York, Compass Chartering Corporation, LB Chartering LLC, Peraco Chartering (USA) Inc., Midship Marine Inc., John F. Dillon & Company amongst others to fix 20 ships from 2000 to date. As a result of entering into the charter / lease for the vessels, the ship broker earns a commission based on a percentage of the daily hire rate paid by HBC to the vessel's owner.

10. HBC also regularly contracts with New York-based companies to carry cargoes. Some of these companies include TCP Petcoke Corp. of Manhattan; Hugo Neu Schnitzer Global Trade LLC of Manhattan; and Netmar of Lake Success; and ADM Rice Inc. of Tarrytown. There

are also numerous other chartering and ship-owning companies within the New York area with whom HBC regularly does business.

11.  In addition to the foregoing, HBC has entered into various Forward Freight Agreements (derivatives contracts) which have been negotiated by Pasternak Baum & Co. of Harrison, New York.

12.  HBC has also agreed to resolve disputes in New York arbitration arising out of charters with Alcoa Steamship Co. of Pittsburgh, PA and Oxbow Carbon & Minerals, Inc. of West Palm Beach, FL.

13.  During the period 2000 to date HBC has employed several law firms in New York in respect to various legal and arbitral proceedings. These firms include Freehill, Hogan & Mahar and Lennon Murphy & Lennon.

14.  Since 2003 to date, HBC has contracted with Fleetweather of Hopewell Junction, New York to provide weather routing information for over 80% of the vessels operated by HBC. As such, HBC has almost daily contact with this New York-based company. HBC also occasionally retains the services of Fleetweather to conduct post-voyage analysis for vessels HBC has chartererd when there is a dispute in which weather is a factor. On average through today, HBC pays Fleetweather approximately $32,000 per year for its services.

15.  Several of the ships chartered by HBC including the M/V CHALLENGER, M/V ATHENA Y, and M/V PHILIPPOS, have called in the Port of New York in the recent past to load and discharge cargoes on behalf of companies with whom HBC had contracted to carry cargo.

16.  HBC has in the past and continues to actively market its services to other New York-based cargo shippers. In this regard, employees of HBC have visited New York in order to

meet with current and potential customers to market the company. HBC representatives have also attended various industry meetings including the Connecticut Maritime Association convention held in Stamford, Connecticut.

17.  Supporting documentation for all of the referenced business dealings set forth above are voluminous. Although such documentation is available and can be produces at the Court's directive, the matters referenced in the above paragraphs are intended to be representative of the extensive level of HBC's New York business dealings.

### HBC's Decision to Register in New York

18.  In recognition of its U.S East Coast business, from August 24, 2005 HBC has been registered with the New York State Department of Corporations to conduct business in the State of New York as a foreign limited partnership. See Exhibit A attached hereto.

19.  As part of HBC's registration with the New York State Department of Corporations, HBC designated the firm of Freehill, Hogan & Mahar as its registered agent for service of process in New York City.

20.  At no time has HBC ever challenged that it is subject to the personal jurisdiction of the Courts in New York.

21.  In sum, HBC has at all material times considered itself subject to the personal jurisdiction of the Courts of New York and the United States.

22.  Since August 24, 2005 any party seeking to obtain jurisdiction over HBC in a legal proceeding commenced in New York merely had to serve legal process on HBC's appointed registered agent Freehill, Hogan & Mahar.

23. In sum, I can state unequivocally that on the date that this action was commenced by Plaintff Minmetals, HBC had a presence in the State of New York (and in the Southern District of New York, which I am advised includes Manhattan) by virtue of its regular business dealings in New York, and in particular because it had previously registered to conduct business within the state, appointed a registered agent for service of process, and consented to the exercise of personal jurisdiction over it in the courts of the State of New York.

24. Thus, to the extent that Minmetals was seeking to obtain jurisdiction over HBC with regard to the claims alleged in its Verified Complaint filed April 11, 2008, it have easily have done so by serving process on HBC's agent for service of process in Manhattan, without resorting to seeking an attachment of HBC's property.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed at Hamburg, Germany on April 18, 2008.

_____
MATHIAS VOGT