222-08/MEU
FREEHILL HOGAN & MAHAR, LLP
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MINMETALS SHIPPING & FORWARDING CO. LTD.,

                                 Plaintiff,

         - against -

HBC HAMBURG BULK CARRIERS, GMBH & CO. KG,

                                Defendant.
------------------------------------------------------------------------x

08 CIV 3533 (RWS)


# MEMORANDUM OF LAW IN SUPPORT OF
# MOTION TO VACATE ATTACHMENT


Of Counsel:
Michael E. Unger (MU 0045)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES        ii

PRELIMINARY STATEMENT        1

PROCEDURAL HISTORY        1

SUMMARY OF ARGUMENT ON REPLY        2

ARGUMENT

       POINT I

       IT IS MINMETALS' BURDEN TO DEMONSTRATE
       WHY THE ATTACHMENT SHOULD BE MAINTAINED        2

       POINT II

       HBC WAS FOUND WITHIN THE DISTRICT
       AT THE TIME THIS ACTION WAS FILED        3

       A.      Personal Jurisdiction Over HBC Exists Because
             HBC is Registered to Do Business in New York        4

       B.      Personal Jurisdiction Over HBC Exists Under the
             "Solicitation Plus" Test        10

       C.      Personal Jurisdiction Exists Over HBC Because HBC
             Sends its Chartered Vessels to New York        13

       POINT III

       THE VIOLATION OF HBC'S DUE PROCESS RIGHTS
       WAS WRONGFUL AND REQUIRES VACATUR OF
       THE ATTACHMENT        14

CONCLUSION        17

## TABLE OF AUTHORITIES

**Cases**

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006) .................. 3, 16

*Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205 (2d Cir. 1970) ............. 10

*Basso v. Utah Power and Light Co.*, 495 F.2d 906 (10th Cir. 1974) ............................................ 15

*Bay Casino, LLC v. M/V ROYAL EMPRESS,* 20 F.Supp.2d 440 (S.D.N.Y. 1998) .................... 5, 8

*Bicicletas Windsor, S.A. v. Bicycle Corporation of America*, 783 F. Supp. 781

    (S.D.N.Y. 1992) ....................................................................................................................... 10

*Cannon v. Newmar Corp.*, 210 F.Supp.2d 461 (S.D.N.Y. 2002) .................................................. 4

*Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 07 CV 4761 (S.D.N.Y.

    September 7, 2007) .................................................................................................................... 6

*Chilean Line, Inc. v. United States*, 344 F.2d 757 (2d Cir. 1965) ................................................ 4

*Douglas v. Donovan*, 704 F.2d 1276 (D.C. Cir. 1983) ................................................................ 15

*Eagan v. Jackson*, 855 F. Supp. 765 (E.D.PA. 1994) ................................................................. 15

*Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co. KG*, 409 F.Supp. 2d 427

    (S.D.N.Y. 2006) ........................................................................................................................ 7

*Express Sea Transport Corp v. Novel Commodities S.A.*, 06 CV 2404 (S.D.N.Y.

    May 4, 2006) ..................................................................................................................... 5, 7, 8

*In re DiNova*, 212 B.R. 437 (2d Cir. 1997) ................................................................................ 15

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....................................................... 11

*Itel Container Int'l Corp. v. Puerto Rico Marine Management Inc.*, 108 F.R.D. 96

    (D.N.J. 1985) ........................................................................................................................... 15

*Iyalla v. TRT Holdings, Inc.*, 2005 U.S. Dist. LEXIS 14913 (S.D.N.Y. 2005) .......................... 4, 6

*J.K. Int'l Pty. Ltd. v. Agriko S.A.S.*, 2007 U.S. Dist. LEXIS 10074 (S.D.N.Y. 2007) .................... 3

*Laufer v. Ostrow,* 55 N.Y.2d. 305, 449 N.Y.S.2d. 456 (1982)............................................... 10, 12

*Maritrans Operating Partners Ltd Partnership* v. *M/V Balsa 37,* 64 F.3d 150 (1995) ............. 8, 9

*Metropolitan Life Ins. Co. v. Robertson-CECO Corp.,* 84 F.3d 560 (2d Cir. 1996) .................... 12

*Navieros Inter-Americanos, S.A. v. M/V Vasilia Express,* 120 F. 3d 304 (1st Cir. 1997)............. 13

*Nea Armonia Shipping Co.* v. *Antco Shipping Co.,* 409 F. Supp. 967 (M.D.Fl. 1976) .................. 9

*Potter's Photographic Applications Co. v. Ealing Corp.,* 292 F. Supp. 92 (E.D.N.Y. 1968)...... 11

*Schenck v. Walt Disney Co.,* 742 F. Supp. 838 (S.D.N.Y. 1990) .................................................. 10

*Seawind Compania, S.A. v. Crescent Line Inc.,* 320 F.2d 580 (2d Cir 1963)................................. 4

*Smit v. Isiklar Holding A.S.,* 354 F.Supp.2d 260 (S.D.N.Y. 2005)................................................. 11

*Thompson Medical Co. v. National Center of Nutrition, Inc.,* 718 F. Supp. 252

    (S.D.N.Y. 1989) ...................................................................................................................... 11

*Time Warner Entertainment Co., L.P. v. Does Nos. 1-2,* 876 F. Supp. 407

    (E.D.N.Y. 1994)...................................................................................................................... 15

*United States v. Cia Naviera Continental S.A.,* 178 F. Supp. 561 (S.D.N.Y. 1959) .................... 14

*VTT Vulcan Petroleum v. Langham Hill Petroleum,* 684 F. Supp. 389

    (S.D.N.Y. 1988) .................................................................................................................. 5, 8

*West of England Ship Owners Mutual Ins. Assoc. v. McAllister Bros., Inc.,* 829 F. Supp. 122

    (E.D.PA. 1993) ...................................................................................................................... 14

*Winter Storm Shipping Ltd. v. TPI,* 310 F.3d 263 (2d Cir. 2002)......................................... 3, 4, 15

**Other Authorities**

*An Introduction to Maritime Attachment Practice Under Rule B,* 20 J.Mar.L. & Comm., No. 4

    (Oct. 1989) at 521 ..................................................................................................................... 4

*Moore's Federal Practice 3d,* Vol. 29 §705.04[2][b], n. 35 ....................................................... 14

## PRELIMINARY STATEMENT

Defendant HBC HAMBURG BULK CARRIERS, GMBH & CO. KG. (hereinafter "HBC"), by and through undersigned counsel Freehill, Hogan & Mahar, LLP, respectfully submits this Memorandum of Law, together with the Affirmation of Michael E. Unger and the Declaration of Mathias Vogt, in support of its motion filed pursuant to Supplemental Rule E(4)(f) of the Federal Rules of Civil Procedure for an Order vacating the April 11, 2008 *ex parte* Order authorizing issuance of the Process of Maritime Attachment and Garnishment ("PMAG") improperly obtained by Plaintiff MINMETALS SHIPPING & FORWARDING CO. LTD., (hereinafter "MINMETALS") pursuant to Supplemental Rule B and for dismissal of the Verified Complaint.

At the time MINMETALS applied for the attachment under Rule B it knew, or should have known, that HBC was, in fact, "found" within the Southern District of New York both by virtue of its business contacts with New York, and because it had previously registered with the New York Department of State, Division of Corporations to conduct business in the State of New York as a foreign limited partnership and designated the undersigned law firm as its agent to accept service of process within the Southern District of New York. Accordingly, the Rule B attachment should never have issued against HBC and the Court should enter an Order vacating the attachment and directing the release of any funds which have been restrained pursuant to the attachment.

## PROCEDURAL HISTORY

On April 11, 2008, Plaintiff MINMETALS filed this action and obtained an *ex parte* Order of Attachment pursuant to Rule B on the ground that Defendant HBC could not be "found" within this District. Along with its application for the order, Plaintiff was required

under Rule B and the Local Admiralty Rules to submit the Affidavit of its counsel detailing the efforts made to locate HBC within the Southern District of New York and attesting that the defendant cannot be found within the district prior to filing the application.  The Affidavit of Plaintiff's counsel, attached to the Unger Affirmation as Exhibit A, affirmatively attests at paragraph 4 that Plaintiff's counsel searched the files of the New York State Department of State and found no listing for Defendant HBC.  To the extent that Plaintiff's counsel did conduct a search for HBC, that search should have revealed the fact that HBC has been registered with the New York State Department of Corporations to conduct business in the State of New York as a foreign limited partnership and has appointed an agent to accept service of process in the Southern District of New York at all times relevant to the attachment.  Based upon this inaccurate premise, the Court issued the *ex parte* Order on April, 11, 2008 authorizing the attachment of $1,981,689 of HBC's property.[1]

For the reasons set forth below, the attachment should be vacated and the Verified Complaint dismissed.

## ARGUMENT

### POINT I

### IT IS MINMETALS' BURDEN TO DEMONSTRATE WHY THE ATTACHMENT SHOULD BE MAINTAINED

A Rule B maritime attachment will not issue unless the plaintiff can establish four basic prerequisites: (1) the plaintiff has an *in personam* maritime claim against the defendant within the court's admiralty jurisdiction; (2) the defendant cannot be "found within the district" where the action is commenced; (3) property belonging to the defendant is present or soon will be present within the district; and (4) there is no statutory or general maritime law proscription of

---

[1] On April 17, 2008, Plaintiff obtained a further *ex parte* Order for issuance of an amended

the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). Rule B(1)(b) provides for initial judicial review at the time that a plaintiff applies for Rule B relief, and such review is typically conducted *ex parte*. The Rule provides that "[t]he court must review the complaint and affidavit and, if the conditions of this Rule B *appear to exist*, enter an order so stating and authorizing process of attachment and garnishment". (emphasis added).   Nonetheless, "a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing [at a hearing held pursuant to Rule E(4)(f)] that he has satisfied the requirements of Rules B and E." *Id.*

Interpretations of Rule E(4)(f) are unanimous in holding that the burden of sustaining an attachment rests squarely with the plaintiff. *Aqua Stoli*, 460 F.2d 434; *J.K. Int'l Pty. Ltd. v. Agriko S.A.S.*, 2007 U.S. Dist. LEXIS 10074, *6-7 (S.D.N.Y. 2007).

For the reasons outlined below, Plaintiff MINMETALS will not be able to sustain its burden of proving that all technical requirements of the attachment have been met as HBC was "found" within the district at the time of the application for the attachment.   Accordingly, the attachment should be vacated.

## POINT II

### HBC WAS FOUND WITHIN THE DISTRICT
### AT THE TIME THIS ACTION WAS FILED

It is axiomatic that an attachment under Rule B is available only against defendants who are not "found" within the District where the attachment is sought. *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002). The Rule itself provides, in pertinent part, as follows:

> **(1)   When   Available;   Complaint,   Affidavit,   Judicial Authorization, and Process.** In an *in personam* action:
> **(a)** If a defendant is not found within the district, a verified complaint may contain a prayer for process to attach the

process of attachment permitting MINMETALS to obtain security up to $2.7 million.

> defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process. **(b)** The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment....

The Rule itself does not explain what "found" means, but the Courts, in interpreting this term, have uniformly resolved that a defendant is "found" for the purposes of Rule B when "the defendant has sufficient contacts with the district to meet minimum due process standards *and* can be served with process in the district." *Winter Storm*, 310 F.3d at 268, *citing* Robert M. Jarvis, *An Introduction to Maritime Attachment Practice Under Rule B*, 20 J. Mar. L. & Comm., No. 4 (Oct. 1989) at 521; *Chilean Line, Inc. v. United States*, 344 F.2d 757 (2d Cir. 1965); *Seawind Compania, S.A. v. Crescent Line Inc.,* 320 F.2d 580, 582 (2d Cir 1963).

Here, there can be no doubt that, at all times relevant to the attachment, HBC had an agent for receipt of service of process in the District as identified on the Department of State website listing for HBC, a copy of which is annexed to the Unger Affirmation as Exhibit B.

The only issue before the Court, then, is whether HBC had "sufficient contacts" to meet "minimum due process standards". The answer to this question is in the affirmative and accordingly the attachment must be vacated as improper and any funds restrained as a result of the attachment must be immediately released.

**A.    Personal Jurisdiction Over HBC Exists Because HBC is Registered to Do Business in New York**

Under New York law, it is well-established that any corporation which is registered to do business in the state is subject to the personal jurisdiction of the courts <u>anywhere</u> within the state. *Iyalla v. TRT Holdings, Inc.*, 2005 U.S. Dist. LEXIS 14913 (S.D.N.Y. 2005), *citing Cannon v.*

*Newmar Corp.*, 210 F.Supp.2d 461, 463 n.2 (S.D.N.Y. 2002) (noting that under C.P.L.R. §301, New York courts have personal jurisdiction over any corporation registered to do business within the state). The New York Department of State's Counsel's Office Legal Memorandum CO01 (annexed as Exhibit F to the Unger Affirmation) makes clear that the "effect of an application for authority is two-fold: the organization acknowledges that it considers itself to be doing business in the state, and it facilitates legal and administrative proceedings by specifying in the application for authority where and in what manner the organization may be served with process."

In addition, a foreign corporation which files a certificate of authority to do business in New York is also deemed to have consented to the personal jurisdiction of the courts throughout the state, even if it is not otherwise subject to *in personam* jurisdiction in New York. *Weinstein, Korn, Miller & Chase, CPLR Manual*, Vol. 1, §3.04[b] (2007). In addition to its registration, HBC has voluntarily submitted and considers itself subject to the personal jurisdiction of the New York Courts. *See* Vogt Declaration ¶¶18, 20-22.

In the two most recent cases to have addressed the issue of whether prior registration with the Division of Corporations makes a putative defendant "found" within the District for purposes of Rule B, Judges Lynch and Sullivan both concluded that the registration was sufficient to establish the defendants were "found" and each vacated the respective order of attachment.

In *Express Sea Transport Corp v. Novel Commodities S.A.*, 06 CV 2404 (S.D.N.Y. May 4, 2006) (unreported, a copy annexed to Unger Affirmation as Exhibit D), Judge Lynch vacated an attachment entered against a foreign corporation which had previously registered to do business with the Secretary of State. Judge Lynch rejected the argument, based upon the holdings in *Bay Casino, LLC v. M/V ROYAL EMPRESS,* 20 F.Supp.2d 440, 451 (S.D.N.Y. 1998) and *VTT Vulcan Petroleum v. Langham Hill Petroleum*, 684 F. Supp. 389 (S.D.N.Y. 1988), that

a defendant may only be found within the district if it engages in substantial commercial activity within the district. The Court concluded that this contention had been rejected by the Second Circuit in *Seawind.* Judge Lynch correctly interpreted the jurisdiction prong of the inquiry to require only that the defendant be amenable to suit. (Unger Affirmation as Exhibit D, p. 8-9) The "key issue is whether the defendant is amenable to suit for whatever reason and not the extent of his physical or commercial presence within the district." Judge Lynch went on to state that, "indeed, to the extent that Rule B attachments are designed at least in part to secure jurisdiction in situations where because the lack of presence of the defendant within the jurisdiction *in personam* jurisdiction cannot be obtained, it certainly seems to make sense to interpret the inquiry in just that way." (Unger Affirmation, Exhibit D, p.7)

In so holding, Judge Lynch found it significant that under New York law a corporation which registers to do business within the State consents to general jurisdiction in the courts of the state. (Unger Affirmation, Exhibit C, p.7, *citing Iyalla*, 2005 U.S. Dist. LEXIS 14913.) The Court was also influenced by the fact that the defendant had specifically consented to *in personam* jurisdiction and agreed to adhere to an order issued by the Court to compel arbitration in London.

Subsequently in *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 07 CV 4761 (S.D.N.Y. September 7, 2007) (unreported, copy annexed to Unger Affirmation as Exhibit E), Judge Sullivan agreed with Judge Lynch's analysis and also rejected the plaintiff's argument that all of the defendant's contacts with the state must be looked at in order to determine whether there is a sufficient jurisdictional presence in New York. Judge Sullivan found this argument inconsistent with the Second Circuit's opinion in *Seawind.* Like Judge Lynch in *Express Sea Transport*, Judge Sullivan reiterated that:

> [t]he key inquiry relating to the jurisdictional prong of the *Seawind*
> test is whether the defendant is amenable to suit within the district.
> Although such amenability may at times be demonstrated tacitly
> through the existence of continuous and systematic contacts such
> as those described by plaintiff, such contacts are by no means the
> only method of demonstrating that a defendant's jurisdictional
> presence in the district. In fact, the language and context of
> *Seawind* suggest that inquiry into the intra-district activities of the
> defendant is more relevant perhaps as a default in the absence of
> more explicit manifestations of jurisdictional acquiescence. Here,
> there is no dispute that the defendant is and was at all times
> relevant to the attachment a registered foreign corporation within
> the State of New York. As such, defendant, under New York law,
> has consented to jurisdiction of the courts of this state.

(Unger Affirmation as Exhibit E, p.7, *citing New York BCL*, 1304-1314).[2]

Continuing, Judge Sullivan opined that, "The suggestion that Rule B and the jurisdictional prong of *Seawind* somehow require more than this so that they would require the court to ignore defendants' explicit consent to jurisdiction in this district in favor of a more cumbersome and unwieldy balancing test of intra-district commercial activity I believe flies in the face of common sense and is not required by *Seawind*." (Unger Affirmation as Exhibit E, p.8) Having determined that the defendant was both amenable to suit in the district and readily available to accept service of process in the district, Judge Sullivan concluded that the defendant had met both prongs of the *Seawind* test.

In their respective decisions, both Judge Lynch and Judge Sullivan expressly rejected the reasoning in the opinion authored by Magistrate Judge Gorenstein in *Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co. KG*, 409 F.Supp. 2d 427 (S.D.N.Y. 2006). Both *Express Sea Transport* and *Centauri* correctly concluded that the act of registration with the Secretary of State is sufficient to meet the jurisdiction prong of the *Seawind* test as in keeping with New York law.

---

[2] The defendant in *Centauri* also consented to the jurisdiction of the court.

7

In *Erne Shipping*, Magistrate Gorenstein conducted an analysis of the purposes of maritime attachment and, relying upon, *Bay Casino, LLC*, 20 F.Supp.2d 440 and *VTT Vulcan Petroleum*, 684 F. Supp. 389, concluded that actual presence based on actual activity within the district was required. Apparently concerned that HBC had registered only a few weeks before the attachment action was filed and could "unregister" at any time, Magistrate Gorenstein concluded that "actual presence" was required to be found as such presence would make it more likely that assets would be located within the district to provide security for the plaintiff. As Judge Lynch noted in *Express Sea Transport*, however, such a requirement appears to be inapposite as Rule B attachment presupposes that there are assets in the district.[3]  Second, while registration can be withdrawn and thus would not guarantee the defendant's presence in the district, although that observation is technically true it is also irrelevant as once a registered corporate defendant is sued and served within the district it is too late for the defendant to revoke its registration because whether a defendant is present for jurisdictional purposes is measured as of the time of the filing of the complaint. The defendant is subject to the jurisdiction of the court and any proceedings necessary to secure the defendant's presence can be taken by the Court pursuant to the Federal Rules of Civil Procedure. If not wanting to submit to the power of the court the defendant subsequently revokes its registration, that would have no effect on any pending litigation, and future plaintiffs would then be able to utilize Rule B attachments against the defendant. Essentially, Rule B gives potential defendants a choice: either they subject themselves to the Courts of the District or they open up the possibility that their property in the District will be attached. (Unger Affirmation, Exhibit D, p.9-10)

The holdings in *Express Sea Transport* and *Centauri* are in no way novel. In fact, the Fourth Circuit in *Maritrans Operating Partners Ltd Partnership* v. *M/V Balsa 37*, 64 F.3d 150

---

[3] Funds of HBC have already been restrained pursuant to the PMAG.

(1995), agreed that registration with the Secretary of State is sufficient to meet the jurisdictional

prong requirement for Rule B purposes.

> Because the Clerk of the State Corporation Commission is
> statutorily appointed under the Virginia Code to accept service of
> process, he is found within the district under Supplemental
> Admiralty Rule B as interpreted by LAR (l)(b)... Virginia Code
> Section 13.1-758F provides for substituted service on the Clerk of
> the State Corporation Commission where a foreign corporation
> without certificate of authority transacts business in the
> Commonwealth but has no director, officer or agent within the
> Commonwealth on which to serve process. Clearly, Maritrans had
> an agent authorized by law upon which to serve process under
> Rule 4(d), and thus does not fall within the LAR's definition of 'not
> found within the district' under Admiralty Rule B.

*Maritrans,* 64 F.3d at 154. *See also Nea Armonia Shipping Co.* v. *Antco Shipping Co.,* 409 F.

Supp. 967, 970 (M.D.Fl. 1976) (holding where New York corporation was qualified with the

Florida Secretary of State, the defendant was subject to *in personam* jurisdiction throughout the

entire state). Concededly, the *Maritrans* case dealt with a local admiralty rule providing a

narrow definition of "not found within the district." Nevertheless, the court vacated the

attachment on the ground that the defendant could be served with process within the district.

Having been granted authority to conduct business within New York, having designated

an agent to receive service of process in Manhattan, and having consented to the *in personam*

jurisdiction of the New York courts, it is undisputable that HBC was "found" within the district

at the time of MINMETALS' application for the attachment. The fundamental underlying

purpose of the maritime attachment remedy, *i.e.*, that the defendant is subject to *in personam*

jurisdiction within the district for *any* claim, is already satisfied and available to any party with a

claim against HBC. This Court should follow the better reasoned decisions by Judges Lynch and

Sullivan and conclude that HBC was "found" within the Southern District of New York prior to

the application for the Rule B attachment and the grounds for granting the attachment were not satisfied *ab initio* and the attachment should be vacated.

**B.    Personal Jurisdiction Over HBC Exists Under the "Solicitation Plus" Test**

Even when a defendant has not registered to do business in the State of New York, personal jurisdiction may still be exercised by New York courts over that defendant if it engages in "solicitation plus". In *Laufer v. Ostrow*, 55 N.Y.2d. 305, 449 N.Y.S.2d. 456 (1982), the New York Court of Appeals held that "where a foreign corporation engages in activities of substance in addition to solicitation there is presence and, therefore jurisdiction." *See also Schenck v. Walt Disney Co.*, 742 F. Supp. 838, 841 (S.D.N.Y. 1990). The "solicitation plus" test is satisfied when, in addition to solicitation, the foreign corporation is involved in some financial or commercial dealings in New York or holds itself out as operating in New York. See *Schenck* 742 F. Supp. at 841 *citing Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 212 (2d Cir. 1970).

In practice, once a defendant demonstrates that it solicits business in New York in any substantial degree, little else is necessary to reach the conclusion that personal jurisdiction over the defendant exists because it is "doing business" in New York. In *Bicicletas Windsor, S.A. v. Bicycle Corporation of America*, 783 F. Supp. 781, 784-85 (S.D.N.Y. 1992), Judge Haight addressed the "solicitation plus" analysis of the New York courts, finding that "[w]hile it is well settled that 'mere solicitation' of business in this state is not sufficient to constitute 'doing business,' and that something more is required, it is clear from the cases in recent years that the something 'more' has become very little else." Judge Haight went on to hold that the District Court had personal jurisdiction over the defendant, noting that its activities fit "neatly" within the "solicitation plus" test:

> [defendant's] business plan includes an active campaign to sell bicycles to New York retailers, and it also purchases parts from New York suppliers. It therefore must be considered to be doing business [in New York] even if the subject of this action did not involve New York."

*Id.* at 785. *See also Thompson Medical Co. v. National Center of Nutrition, Inc.*, 718 F. Supp. 252 (S.D.N.Y. 1989).

Notwithstanding the findings of *Erne Shipping*, HBC more than meets the minimum required of "more" in the solicitation plus test, because HBC has regularly engaged in contracting with New York based companies, continues to engage in contracts in New York, and expects to continue to do so in the future, which is the reason that HBC has registered to do business in New York. Moreover, HBC earns significant revenues in New York, which – aside from the contracts themselves – would be sufficient to satisfy the "more" requirement in the solicitation plus test. *See* Vogt Declaration ¶¶9-15.

It has long been held that contracting activities in New York are a substantial contact that makes it fair for a corporate defendant to expect to be hailed into the courts of New York pursuant to *International Shoe Co. v. Washington*, 326 U.S. 310, 317-20 (1945). *See e.g. Smit v. Isiklar Holding A.S.,* 354 F.Supp.2d 260 (S.D.N.Y. 2005*)* (allegations that a Turkish holding company entered into or assumed obligations under a contract in the State of New York and obligated itself to perform that contract on an ongoing basis in New York were sufficient to make a *prima facie* showing of personal jurisdiction); *Potter's Photographic Applications Co. v. Ealing Corp.,* 292 F. Supp. 92 (E.D.N.Y. 1968*)* (holding that a foreign corporation which negotiated an exclusive dealership contract on at least three occasions in New York, which contract contemplated shipment of merchandise into New York for resale, coupled with other factors contemplated such fair measure of permanence and continuity that foreign corporation

was "doing business" within the state for jurisdictional purposes pursuant to *C.P.L.R. §301*).

HBC's contracting activities in New York are substantial. HBC has fixed 20 vessels with shipbrokers located in New York. These brokers include Steel Traders Shipping Ltd. of Nyack, New York, Steel Traders Chartering of Irvington, New York, and Lalemant (USA) Inc. of Tarrytown, New York. *See* Vogt Declaration ¶9. HBC also regularly contracts with New York-based companies to carry cargoes aboard ships which it charters. Some of the New York-based companies which HBC contracts with most frequently are TCP Petcoke Corp., Hugo Neu Schnitzer Global Trade LLC, Netmar 1992 Inc. and ADM Rice Inc. *See* Vogt Declaration ¶10. HBC also regularly contracts with New York-based cargo brokers, has agreed to resolve disputes in arbitration, retained law firms, and a weather routing service, all based in New York. HBC also regularly markets to and attends in New York. *See* Vogt Declaration ¶10-15.

Generation of substantial revenues within New York is also a significant factor and "contact" with New York that gives rise to personal jurisdiction under the solicitation plus test. *Laufer*, 55 N.Y.2d. at 312 (noting in pertinent part that the defendant's generation of two million dollars per year in gross revenue in the state makes it evident that there is no unfairness in asserting personal jurisdiction over the defendant). The revenue generated through HBC's New York business activities is also substantial. HBC has earned approximately $87.6 million in gross revenue (representing over 10% of its total revenues) from shipments undertaken on behalf of New York-based companies alone from October 2000 to date. *See* Vogt Declaration ¶7.

HBC also regularly travels to New York for business purposes. Business travel such as that engaged in by HBC has been held to be a significant contact that will weigh in favor of a finding of personal jurisdiction. *See Metropolitan Life Ins. Co. v. Robertson-CECO Corp.*, 84 F.3d 560, 573 (2d Cir. 1996) (holding that although the defendant did not own property in the

state, and exercised no control over its independent dealers in the state, its visits to the dealers and others in the state for business purposes, together with its marketing efforts within the state satisfied the "minimum contacts" requirement of due process so as to exercise personal jurisdiction over the defendant).

Accordingly, under the circumstances, HBC clearly meets and exceeds the "solicitation plus" test so as to confer personal jurisdiction over it.

## C.    Personal Jurisdiction Exists Over HBC Because HBC Sends its Chartered Vessels to New York

HBC has sent three ships, the M/V Challenger, M/V Philippos and M/V Anthena Y, to call in the Port of New York. *See* Vogt Declaration ¶15. Even under the analysis in *Bay Casino,* 20 F.Supp.2d at 440, the defendant would satisfy the jurisdictional prong of the "found" within the district test set forth in *Seawind* as sending a vessel into a district constitutes substantial business within the district. *Id.* at 451[4] (*citing Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F. 3d 304, 315 (1st Cir. 1997) (noting that when the owner of the vessel purposefully sent its ship into Puerto Rico it subjected itself to jurisdiction in that district)). Here, by sending vessels to New York, HBC is thereby engaging in substantial business within this District satisfying the personal jurisdiction prong.

Whether by the act of registration alone or looking at the registration in conjunction with its acceptance of the personal jurisdiction of the courts and its other substantial continuous and permanent activities in New York, it is inescapable that HBC is and was "found" in the Southern District of New York at all times relevant to the attachment and the Order of attachment must be vacated.

---

[4] In *Bay Casino*, the court ultimately held that the defendant was not "found" on the sole basis that it could not be served within the District. The *Bay Casino* Court indicated that the defendant's contacts with the District were in fact sufficient to satisfy the first prong of the test –

## POINT III

## THE VIOLATION OF HBC'S DUE PROCESS RIGHTS WAS WRONGFUL AND REQUIRES VACATUR OF THE ATTACHMENT

It is universally accepted by the courts and, in fact, there is a statutory due process requirement under Supplemental Admiralty Rule B that before a court may issue an *ex parte* order authorizing process of maritime attachment and garnishment, the plaintiff's counsel must submit an affidavit setting forth its efforts to determine the defendant's presence in the district. *See Supplemental Admiralty Rule B.* Rule B states, specifically, as follows:

> The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Supp. Adm. R. (B). Local Rule B.1 goes further, imposing the following requirement:

> The affidavit required by Supplemental Rule B(I) to accompany the complaint, and the affidavit required by Supplemental Rule B(2)( c), shall list the efforts made by and on behalf of the plaintiff to find and serve the defendant within the district.

Loc. Adm. R. B.l. The Plaintiff must make a bona fide effort to find the Defendant in advance of the application for an attachment. *See Moore's Federal Practice 3d*, Vol. 29 §705.04[2][b], n. 35. As outlined in *United States v. Cia Naviera Continental S.A.*, 178 F. Supp. 561, 564-66 (S.D.N.Y. 1959), an inquiry must be made by the Plaintiff as to whether the Defendant could be found, and requires an exercise of "due diligence" to locate the Defendant. *See also, Seawind,* 320 F.2d at 583; *West of England Ship Owners Mutual Ins. Assoc. v. McAllister Bros., Inc.*, 829 F. Supp. 122, 123-24 (E.D.PA. 1993).

---

that personal jurisdiction existed.

Counsel always retain an obligation to bring all relevant facts and circumstances to the attention of the court. *Douglas v. Donovan*, 704 F.2d 1276, 1279 (D.C. Cir. 1983). The omission of significant facts by counsel cannot be tolerated, since it invariably leads to the extension of proceedings and waste of judicial resources. *Basso v. Utah Power and Light Co.*, 495 F.2d 906, 910 (10th Cir. 1974). As officers of the court, counsel have a duty to operate with candor and in good faith. *Itel Container Int'l Corp. v. Puerto Rico Marine Management Inc.*, 108 F.R.D. 96, 103-04 (D.N.J. 1985). The importance of being candid with the court is even greater when an application is being made *ex parte*:

> Candor to the court, though desirable under any circumstances, is mandated in *ex parte* proceedings where the court is deprived of the benefits of the "dialect of the adversary system."

*In re DiNova*, 212 B.R. 437, 447 (2d Cir. 1997) (*quoting Eagan v. Jackson*, 855 F. Supp. 765, 790 (E.D.PA. 1994)). This greater obligation arises in *ex parte* proceedings because such proceedings lack the safeguards of adversarial proceedings. *Time Warner Entertainment Co., L.P. v. Does Nos. 1-2*, 876 F. Supp. 407, 415 (E.D.N.Y. 1994). This obligation is breached if the facts, while not inaccurate, might mislead a court in granting an emergency application. *Id.* at 415 n.8.

Rule B was amended in 1995 specifically to provide for judicial scrutiny before the issuance of any attachment, so as to provide due process to the Defendant. *Winter Storm*, 310 F.3d 263. The purpose of the judicial review is to make certain that the papers supporting the application for an attachment present a *prima facie* case for granting and maintaining the attachment. *Advisory Committee Notes* for Rule B. Such judicial review, though, is frustrated if the applicant submits papers that distort the facts.

Here, the Affidavit submitted by Plaintiff's counsel falls short of the due diligence requirement to search for the Defendant in order to obtain an attachment under Rule B. That the Affidavit submitted by Plaintiff's counsel in this case failed to mention HBC's registration with the New York State Division of Corporations with an authorized/appointed agent for service of process in the District highlights the violation of HBC's due process rights.

This material misrepresentation, or omission, was not a "harmless error". Rather it deprived HBC of its minimal due process rights afforded by Rule B and Local Rule B.1 in that the April 11, 2008 *ex parte* Order was issued without the Court possessing the full facts with regard to HBC's presence within the District. The bottom line is that when it sought the equitable remedy of attaching HBC's property for nearly $2 million on an *ex parte* basis pursuant to Rule B, plaintiff had an absolute obligation to "get it right" and to fully disclose accurate facts to the Court relating to HBC's presence in New York. Its inexcusable and abject failure to do so provides the Court with more than a sufficient basis to vacate the attachment.

Accordingly, the Court should employ its equitable powers to vacate this attachment as improper. *Aqua Stoli*, 460 F.3d 434.

## **CONCLUSION**

For all the foregoing reasons, the attachment should be vacated, Plaintiff should be precluded from continuing to serve the PMAG issued herein on potential garnishees, the parties should be directed to arbitrate their dispute in London and this matter should be stayed pending the outcome of London arbitral proceedings.

Dated: New York, New York
       April 22, 2008

            FREEHILL HOGAN & MAHAR, LLP
            Attorneys for Defendant
            HBC Hamburg Bulk Carriers, GmbH & Co., KG


       By: _____
            Michael E. Unger (MU 0045)
            80 Pine Street
            New York, NY 10005
            (212) 425-1900
            (212) 425-1901 fax