222-08/MEU
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
HBC HAMBURG BULK CARRIERS GmbH, & KG
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Michael E. Unger (MU 0045)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MINMETALS SHIPPING &
FORWARDING CO. LTD.,

                                **08 CIV 3533 (RWS)**

              Plaintiff,

     -against-                          **UNGER AFFIRMATION**

HBC HAMBURG BULK
CARRIERS GmbH, & KG,

              Defendant.
-----------------------------------------------------------x
       MICHAEL E. UNGER, an attorney at law, affirms under penalty of perjury of the

laws of the United States of America as follows:

       1.     I am an attorney admitted to practice before this Honorable Court and act as

counsel for the Defendant herein, HBC HAMBURG BULK CARRIERS GmbH & KG

(hereinafter "HBC"), and am a member of the law firm of Freehill Hogan & Mahar, LLP.

       2.     I submit this Affirmation based on facts and information known to me

personally as well as documents and information provided to me by HBC and its

representatives, all of which I believe to be true and accurate.

       3.     Plaintiff MINMETALS SHIPPING & FORWARDING CO. LTD.

(hereinafter "MINMETALS"), commenced this action on April 11, 2008 claiming damages

against HBC based on an alleged breach of a charter party involving the M/V FLORIANA

NYDOCS1/303061.1

BREEZE. Plaintiff MINMETALS also initially sought security for its claims arising out of the alleged breach of the charter in the sum of $1,981,689.

4.       MINMETALS thereafter sought and obtained an *ex parte* order for issuance of Process of Maritime Attachment and Garnishment ("PMAG").

5.       In support of MINMETALS motion for the *ex parte* order of attachment, in compliance with Rule B and the Local Admiralty Rules, plaintiff's counsel submitted the Affidavit attached hereto as Exhibit A. The Affidavit affirmatively attests at paragraph 4 that plaintiff's counsel searched the files of the New York State Department of State and found no listing for Defendant HBC.

6.       It is clear that the search performed by plaintiff's counsel, if done, was inadequate as HBC had registered with the New York Secretary of State, Department of Corporations, in August 2005 to conduct business in the State of New York as a foreign Limited Liability Partnership. A copy of the printout from the New York State Department of State Division of Corporations website confirming the foregoing is attached hereto as Exhibit B.

7.       In filing with the Division of Corporations, HBC identified the undersigned as its registered agent to receive service of process on its behalf in Manhattan.

8.       Attached hereto as Exhibit C is a copy of the April 17, 2008 Affidavit of plaintiff's counsel submitted in support of plaintiff's application for an Amended PMAG. In this second Affidavit plaintiff's counsel, at paragraph 4, indicates that he failed to enter the full name of HBC Hamburg Bulk Carriers GmbH & Co. KG when conducting his initial search of the Division of Corporations website. Had counsel simply entered either "HBC" or "Hamburg Bulk Carriers" at the time of the initial search and selected the

1

"contains" rather than the "begins with" tab under the "search type" selection he would have instantly accessed information confirming HBC was registered to do business in New York in August 2005.

9.      Annexed hereto as Exhibit D is a copy of the Order issued by Judge Lynch in *Express Sea Transport Corp against Novel Commodities S.A.*, 06 CV 2404 (GEL) (unreported) vacating the attachment issued in that action on the basis that the defendant was "found" in the Southern District of New York based upon its registration as a foreign company to do business in the State of New York via the Secretary of State, Division of Corporations Office.  Additionally attached as part of Exhibit D is a true and correct copy of the transcript of the oral decision issued by Judge Lynch on May 4, 2006 providing his reasoning for the vactur order.

10.      Annexed hereto as Exhibit E is a copy of the Order issued by Judge Sullivan in *Centauri Shipping, LTD v. Western Bulk Carriers KS*, 07 CV 4761 (RJS) vacating the Order of Attachment in that action again on the basis that the defendant was found within the District by reason of having registered with the Secretary of State, Division of Corporations.  Also attached as part of Exhibit E is a copy of the transcript of the September 7, 2007 oral decision of Judge Sullivan setting forth his reasons for granting the motion to vacate.

11.      Annexed hereto as Exhibit F is a copy of the New York State Department of State's Counsel's Office Legal Memorandum C001.

I declare under penalty of perjury of the laws of the United States of America the
foregoing is true and correct.

Dated: New York, New York
April 22, 2008

_____
Michael E. Unger (MU 0045)

# Exhibit A

## Unger Affirmation

JUDGE SWEET

08 CV 3533

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (646) 593-8866
Fax:    (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MINMETALS SHIPPING & FORWARDING
CO. LTD.

                               Plaintiff,

                       - against -

ECF CASE

08 CV _____ (    )

**AFFIDAVIT IN SUPPORT OF
APPLICATION FOR
MARITIME ATTACHMENT**

HBC HAMBURG BULK CARRIERS
GmbH, & Co. KG

                         Defendant

------------------------------------------------------------X

STATE OF NEW JERSEY  )
                        )   ss:
COUNTY OF BERGEN    )

      RAHUL WANCHOO, being duly sworn, deposes and says:

      1.     I am a member of the firm of Law Offices of Rahul Wanchoo attorneys for

Plaintiff, MINMETALS SHIPPING & FORWARDING CO. LTD. and make this affidavit in

support of Plaintiff's application for the issuance of Process of Maritime Attachment and

Garnishment pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and

Maritime Claims of the Federal Rules of Civil Procedure.

2.      Based upon my inquires and to the best of my information and belief, Defendant,

HBC Hamburg Bulk Carriers GmbH, & Co. KG is a foreign corporation and that it cannot be

found within this District.

3.      I have not found Defendant listed in the New York telephone directory.  I have

also called the telephone directory assistance bureaus for this District (Area Codes 212, 718,

914), and have been informed by the operators that there are no listings for Defendant in any of

these areas.

4.      I have caused an online search to be made of the files containing corporate

records for the New York Department of State, which includes businesses registered to do

business in New York, and have found no listings for Defendant.

5.      I have caused a search to be made of the worldwide web using the Google search

engine and have not located any site that indicates Defendant has any presence within the

district.

7.      Accordingly I respectfully submit Defendant cannot be found within the district

and that process of maritime attachment and garnishment should be issued.

8.      No previous application for an Order of Attachment or similar relief has been

sought in this matter.

_____
RAHUL WANCHOO

Sworn to before me this
11th day of April, 2008.

_____
Notary Public

Masha Eleiman
Notary Public
State of New Jersey
My Comm. Expires Nov. 15, 2011

2

# Exhibit B

# Unger Affirmation

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: HBC HAMBURG BULK CARRIERS GMBH & CO KG

Selected Entity Status Information

**Current Entity Name:** HBC HAMBURG BULK CARRIERS GMBH & CO KG
**Initial DOS Filing Date:** AUGUST 24, 2005
**County:** NEW YORK
**Jurisdiction:** GERMANY
**Entity Type:** FOREIGN LIMITED PARTNERSHIP
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
C/O FREEHILL HOGAN & MAHAR
80 PINE ST
NEW YORK, NEW YORK, 10005

**Registered Agent**

MICHAEL UNGER
C/O FREHILL HOGAN & MAHAR
80 PINE ST.
NEW YORK, NEW YORK, 10005

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page     NYS Department of State Home Page

# Exhibit C

## Unger Affirmation

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (646) 593-8866
Fax:    (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com

*Recieved this*
*document*

*X Theresa DePace*
*Date: 4/21/08*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

MINMETALS SHIPPING & FORWARDING
CO. LTD.

                Plaintiff,

         - against -

ECF CASE

08 Civ. 3533 (RWS)

**AFFIDAVIT IN SUPPORT OF
AMENDED APPLICATION FOR
MARITIME ATTACHMENT**

HBC HAMBURG BULK CARRIERS
GmbH, & Co. KG

                Defendant

----------------------------------------------------------------X

STATE OF NEW JERSEY  )
                  )   ss:
COUNTY OF BERGEN   )

      RAHUL WANCHOO, being duly sworn, deposes and says:

     1.     I am a member of the firm of Law Offices of Rahul Wanchoo attorneys for

Plaintiff, MINMETALS SHIPPING & FORWARDING CO. LTD. and make this affidavit in

support of Plaintiff's application for the issuance of Process of Maritime Attachment and

Garnishment pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and

Maritime Claims of the Federal Rules of Civil Procedure.

2. Based upon my inquires and to the best of my information and belief, Defendant, HBC Hamburg Bulk Carriers GmbH, & Co. KG is a foreign corporation and that it cannot be found within this District.

3. I have called the telephone directory assistance bureau for this District (Area Codes 212, 718, 914), and have been informed by the operators that there is a telephone listing for Defendant in the 212 Area Code, namely 212-751-7233. However, when I called that number twice I got no response from the other side.

4. I have caused an online search to be made of the files containing corporate records for the New York Department of State, which includes businesses registered to do business in New York. Our initial search was made using the name "Hamburg Bulk Carriers GmbH, & Co. KG", which inadvertently did not include the acronym "HBC" preceeding the name, and found no listings for Defendant. A subsequent search of the New York Corporations database using the complete name "HBC Hamburg Bulk Carriers GmbH, & Co. KG" shows that Defendant is registered in New York State as a foreign limited partnership in August 2005 and appointed Mr. Michael Unger of the law firm of Freehill Hogan & Mahar in New York as its registered agent.

5. I have caused a search to be made in LexisNexis and have identified the case of Ernie Shipping v. HBC Hamburg Bulk Carriers, 409 F. Supp. 2d 427 (S.D.N.Y. 2006), in which the court discusses Defendant's business contacts with New York and held that those contacts were insufficient for Defendant to be "found" within the District.

6. I have caused a search to be made of the worldwide web using the Google search engine and have not located any site that indicates Defendant has any presence within the District.

2

7.    Accordingly I respectfully submit Defendant cannot be found within the district and that the amended process of maritime attachment and garnishment should be issued.

_____

RAHUL WANCHOO

Sworn to before me this
17th day of April, 2008.

_____
Notary Public

**Michael C. Zeale**
**Notary Public State of New Jersey**
**My Commission Expires**
**August 8, 2010**

# Exhibit D

# Unger Affirmation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
EXPRESS SEA TRANSPORT CORP.,                                :
                                                            :
                          Plaintiff,                        :
                                                            :
          -against-                                         :
                                                            :
NOVEL COMMODITIES S.A.,                                     :
                                                            :
                          Defendant.                        :
                                                            :
------------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/5/06
```

06 Civ. 2404 (GEL)

**ORDER**

GERARD E. LYNCH, District Judge:

 For the reasons stated on the record in open court on May 4, 2006, the attachment issued by this Court on March 28, 2006, is hereby vacated.

 The parties are instructed that unless reason is given before May 15, 2006, as to why this action should continue, the Court will dismiss the action.

SO ORDERED.

Dated: New York, New York
   May 4, 2006

            GERARD E. LYNCH
          United States District Judge

654YEXPC.txt

1

654YEXPC
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   EXPRESS SEA TRANSPORT CORP.,
3
4            Plaintiff,
4
5        v.                          06 Civil 2404 (GEL)
5
6   NOVEL COMMODITIES S.A.,
6
7            Defendant.
7
8   ------------------------------x
8
9                                    May 4, 2006
9                                    3:15 p.m.
10
10
11  Before:
11
12          HON. GERARD E. LYNCH,
12
13                                   District Judge
13
14
14
15                  APPEARANCES
15
16
16  FREEHILL, HOGAN & MAHAR, LLP
17  Attorneys for Plaintiff
17      80 Pine Street
18      New York, New York
18  MICHAEL E. UNGER, ESQ.,
19      Of counsel
19
20
20  FOWLER, RODRIGUEZ & CHALOS, LLP
21  Attorneys  for Defendant
21      336 Main Street
22      Port Washington, New York
22  OWEN F. DUFFY, ESQ.,
23  BRIAN T. MCCARTHY, ESQ.,
23      Of counsel
24
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

654YEXPC
1           THE CLERK:  In the matter of Express Sea Transport
2   Corporation against Novel Commodities.
3           Counsel, please identify yourselves for the record,
4   beginning with plaintiff.
5           MR. UNGER:  Michael Unger, Freehill, Hogan & Mahar for
6   Express Sea Transport.
7           MR. DUFFY:  Owen Duffy for the defendant Novel
8   Commodities, with my colleagues Brian McCarthy.
                            Page 1

654YEXPC.txt

 9    THE COURT:  Good afternoon, counsel.
10         This case is before the court on the defendant's
11  motion to vacate an order of maritime attachment that was
12  entered on March 29, 2006.  The parties appeared for a hearing
13  on May 2 and I promised to decide the matter by this afternoon.
14         After considering the arguments presented at the
15  hearing and contained in the parties' papers and the subsequent
16  submissions made by both sides, the court will now grant the
17  defendant's motion and vacate the attachment.
18         Under Rule B of the Supplemental Rules of Certain
19  Admiralty and Maritime Claim, a plaintiff may attach a
20  defendant's property within the district if the plaintiff's
21  claim is a maritime action and if the defendant is not found
22  within the district.  The defendant has challenged the validity
23  of plaintiff's attachment and, therefore, plaintiff has the
24  burden to show that the attachment was proper.  In this case
25  the dispute regarding the propriety of the attachment centers
              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              3

654YEXPC

 1  on whether the defendant, Novel, can be found within the
 2  district for the purposes of Rule B.
 3         A defendant is found within the district if it is
 4  both, one, found within the district for purposes of
 5  jurisdiction and, two, found within the district for purposes
 6  of service of process.  That is Seawind Compania, S.A., versus
 7  Crescent Line Incorporated, 320 F.2d 580 at 582, (2d Cir.
 8  1963).
 9         The plaintiff argues that under this test the
10  defendant was not found in the district because plaintiff
11  engaged in a diligent search for the defendant and didn't find
12  him.  This argument is without merit for two reasons:
13         First, plaintiff's reliance on the diligence of its
14  search is misplaced.  There is case law supporting the
15  proposition that a diligent search that fails to undercover
16  defendant's agent for service of process is sufficient to
17  satisfy the service prong inquiry even if the defendant does,
18  in fact, have an agent for process within the district.  See,
19  for example, West of England Ship Owners Mutual Insurance
20  Association versus MacAllister Brothers Incorporated, 829 F.
21  Supp. 122 at 123 to 24, Eastern District of Pennsylvania, 1993.
22         The applicability of this rule to the service prong
23  makes some degree of sense.  A defendant should not be able to
24  avoid suit by hiding an agent away from potential plaintiffs
25  thereby forcing the plaintiff to attach property before the
              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              4

654YEXPC

 1  defendant comes forward to reveal the hidden agent.  In such a
 2  situation a determination that a defendant is not found within
 3  the district for service of process despite the fact that there
 4  was an agent within the district serves as a sort of penalty
 5  rule to discourage any hidden agent tactics.
 6         Plaintiff has pointed to no case, however, that
 7  applies this doctrine to the jurisdiction prong of the inquiry,
 8  and the rational that underpins the doctrine on the service
 9  issue does not extend to the jurisdiction issue.
10         Second, regardless of the applicability of plaintiff's
11  argument regarding what was knowable at the time of the search,
12  the record reveals that plaintiff did, in fact, know all the
13  relevant facts.  Plaintiff did find by going to the office of
                          Page 2

654YEXPC.txt

14  the New York Secretary of State that defendant had a registered
15  agent for service of process within the district.  In fact, in
16  arguing that its search was diligent, plaintiff asserts that
17  the search "revealed the very items which defendant now asserts
18  constituted its presence."  Plaintiff's memorandum at pages 2
19  to 3.
20          The issue for the court, therefore, is not the
21  diligence of plaintiff's search, but, rather, whether the facts
22  uncovered by that search, the same facts asserted by the
23  defendant, lead to the conclusion that the defendant can be
24  found within this district.
25          As previously mentioned, the determination of whether

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

654YEXPC

1  a defendant is found within the district for purposes of Rule B
2  is governed by the two-prong Seawind test.
3          Taking the second prong of the test first, it is clear
4  that defendant is found in the district for service of process
5  purposes.  Plaintiff admits that the defendant has designated
6  an agent for service of process with the New York Secretary of
7  State.
8          Plaintiff argues, however, that defendant nevertheless
9  may not be found within the district for purposes of service of
10  process because when plaintiff's attorney called the offices of
11  defendant's agent, the person who answered the phone was unable
12  to confirm that the agent was authorized to accept service on
13  behalf of defendant.  Plaintiff provides no information with
14  regard to who this person on the phone was or whether he or she
15  is expected to know anything about defendant's agreement with
16  the agent to accept service on defendant's behalf.  Plaintiff
17  did not attempt to follow up on the phone call nor did it
18  attempt to serve defendant via the agent.  One inconclusive
19  phone call is insufficient to carry plaintiff's burden of
20  showing that the defendant is not found in the district for
21  purposes of service, especially in light of the parties'
22  agreement that the defendant does, in fact, have a registered
23  agent on file with the Secretary of State and the fact that
24  plaintiff actually and without difficulty discovered that fact
25  and defendant's averment that the agent is, in fact, authorized

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

654YEXPC

1  to accept service.
2          Turning now to the first jurisdictional prong of the
3  inquiry, the court also finds that defendant can be found
4  within this district for purposes of jurisdiction.  To satisfy
5  this test, a defendant must "be engaged in sufficient activity
6  in the district to subject it to jurisdiction even in the
7  absence of a resident agent expressly authorized to accept
8  process."  Seawind, 320 F.2d at 383.
9          Plaintiff argues that a defendant may only be found
10  within the district if it engages in substantial commercial
11  activity within the district.  Essentially, the plaintiff's
12  view is that whether defendant is subject to suit in the
13  district is irrelevant and that what matters is the sum of
14  defendant's activities in the district regardless of the
15  connection between those activities and any requirements of
16  personal jurisdiction.
17          However, our Court of Appeals rejected that rule in
18  Seawind by stating the jurisdiction prong can be met by a

Page 3

654YEXPC.txt
19  showing of specific personal jurisdiction arising from the
20  particular claims there at issue even if the defendant's
21  broader activities were insufficient to establish general
22  jurisdiction.
23          Accordingly, this court interprets the jurisdiction
24  prong of the inquiry to require only that the courts of this
25  district have personal jurisdiction over the defendant whatever

7

654YEXPC
1   the basis of that jurisdiction may be.  And, indeed, to the
2   extent that Rule B attachments are designed at least in part to
3   secure jurisdiction in situations where because of the lack of
4   presence of the defendant within the jurisdiction in personam
5   jurisdiction cannot be obtained, it certainly seems to make
6   sense to interpret the inquiry in just that way.
7           In this case the defendant is subject to suit in the
8   courts of this district and, therefore, may be found here for
9   purposes of jurisdiction.  This is so for two reasons:
10          First, the defendant has stated on the record that it
11  would submit to an order issued by this court to compel
12  resolution of the underlying dispute in arbitration in London
13  as required by the charter party, thus, defendant has
14  specifically consented to the jurisdiction of this court.
15          Second, defendant is a registered foreign corporation
16  within the State of New York and under New York law a
17  corporation that registers to do business within the state
18  consents to general jurisdiction in the courts of the state.
19  See Iyalla versus TRT Holdings Incorporated, 2005 Westlaw
20  1765707 at page star 3, (S.D.N.Y. July 25, 2005).  Accordingly,
21  defendant is subject to suit in the courts of this district
22  and, therefore, defendant may be found within the district for
23  purposes of jurisdiction.
24          The cases relied upon by plaintiff do not compel a
25  contrary conclusion.  First and foremost, plaintiff cites only

8

654YEXPC
1   to opinions of district courts and magistrate judges and so to
2   the extent that those jurisdictions are contrary to governing
3   Second Circuit authority, this court must follow its own best
4   understanding of circuit case law in preference to that of
5   courts of parallel authority.
6           Second, the cases cited do not support plaintiff's
7   contention that only substantial commercial activity makes a
8   court finding that a defendant is found within the district for
9   purposes of jurisdiction.  To the contrary, the cases cited by
10  plaintiff support the conclusion that the relevant issue is
11  amenability to suit.
12          For example, in Federazione, a case relied on heavily
13  by plaintiff, the district court inquired into defendant's
14  business activity within the district, but only insofar as that
15  activity related to the question of whether it was "unfair or
16  unreasonable to require defendant to respond to suit in this
17  forum."  Federazione Italiana versus Mandask Compania De
18  Vapores, S.A., 158 F. Supp. 107 at 109, S.D.N.Y. 1957).
19          Similarly, in Bay Casino, the district court listed
20  substantial commercial activity as just one of many ways in
21  which a defendant could be found within the district for
22  purposes of jurisdiction, along with, for example, breaching a
23  contract within the district or signing a forum selection
Page 4

654YEXPC.txt

24   clause.  Bay Casino, LLC versus M/V Royal Empress, 20 F. Supp.
25   2d 440 at 451, (S.D.N.Y 1998).  If signing a forum selection
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

654YEXPC
1   clause is sufficient to render a defendant present within the
2   jurisdiction, it must follow that the key issue is whether the
3   defendant is amenable to suit for whatever reason and not the
4   extent of his physical or commercial presence within the
5   district.
6          The only case cited by plaintiff that appears to adopt
7   its substantial activity interpretation of the jurisdiction
8   test is Erne Shipping Incorporated versus HBC Hamburg Bulk
9   Carriers GMbH & Co., 409 F. Supp. 2d 427, (S.D.N.Y 2006).
10         Aside from the fact that Erne appears to this court to
11   be in conflict with Seawind, this court does not find the
12   reasoning of Erne persuasive.  The magistrate judge in Erne
13   concluded that the defendant's registration to do business in
14   New York and the accompanying consent to general jurisdiction
15   was insufficient to amount to being found in the district for
16   purposes of jurisdiction.  The court's conclusion was based on
17   an analysis of the purposes of maritime attachment, which it
18   concluded require actual presence based on actual activity
19   within the district.
20         First, the court concluded that actual presence would
21   make it more likely that assets would be found within the
22   district to provide security for plaintiff.  This appears
23   inapposite.  A Rule B attachment presupposes that there are
24   assets in the district, assets that have already been attached.
25         Second, the court concluded that registration would
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

654YEXPC
1   not guarantee defendant's presence in the district because
2   registration can be withdrawn.
3         While that observation is technically true, it is also
4   somewhat irrelevant.  Once a registered corporate defendant is
5   sued and served within the district, it is too late for the
6   defendant to revoke its registration.  The defendant is subject
7   to the jurisdiction of the court and any proceedings necessary
8   to secure the defendant's presence can be taken by the court
9   pursuant to the Federal Rules.  If not wanting to submit to the
10   power of the district court the defendant subsequently revokes
11   it's registration, that would have no effect on any pending
12   litigation, and future plaintiffs then would be able to utilize
13   Rule B attachment.  Essentially, Rule B gives potential
14   defendants a choice; either they subject themselves to the
15   courts of the district or they open up the possibility that
16   their property in the district will be attached.
17         Defendant is found and was found by the plaintiff
18   within the district for the purposes of service of process and
19   for the purposes of jurisdiction.  Therefore, defendant was
20   found within the district under Rule B and the attachment must
21   be vacated.
22         The parties devote considerable attention to an issue
23   that has divided the judges in this district, whether on a
24   motion to vacate a Rule B attachment a plaintiff must show, in
25   addition to satisfying the explicit requirements of Rule B,
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

Page 5

654YEXPC.txt
654YEXPC
1  that the attachment is fair or accords with the purposes of the
2  rule.
3          Because this court has determined that the
4  requirements, the technical requirements of Rule B are not
5  satisfied, it is not necessary to reach that issue.  The
6  requirements of Rule B have not been met and, therefore,
7  defendant's motion to vacate the attachment is granted.
8          Okay.  I think that resolves the attachment issue and
9  the question then is, is there anything else that remains of
10 this action?
11          If the action were solely for purposes of securing the
12 attachment, then I suggest that it be withdrawn.  If the
13 complaint on the other hand seeks to have the defendant submit
14 to arbitration, the defendant has already stipulated in open
15 court that it would do so and I think that probably renders the
16 action moot, but maybe the best way to do that is to enter that
17 stipulation in writing and then, in effect, dismiss the case as
18 settled on that basis, but I will leave it to the parties to
19 discuss that and see what is going to happen next.
20          I guess just to put a terminus on it, if I don't hear
21 something different from the parties within, let's say,
22 essentially ten days, by a week from Monday, then I will
23 dismiss the action as moot.
24          All right.  Anything else that we need to do today?
25          MR. DUFFY:  May, your Honor, WE issue a formal order,
                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
                                                                    12
654YEXPC
1  because we need to present it to the garnishee.
2          THE COURT:  Yes.  We will put out the order right away
3  for reasons stated in open court on this date on the record the
4  attachment is vacated.  If you want some other form of order
5  you can submit it.
6          MR. DUFFY:  So the garnishee is satisfied.
7          THE COURT:  Right.  That ought to do it.
8  Yes.
9          MR. UNGER:  Your Honor, a couple of things.
10          There is a ten day automatic stay that applies to the
11 release of the funds by the garnishee.  I would ask that your
12 Honor keep that stay in place so that the funds remain, because
13 I believe my client is going to instruct an appeal of your
14 Honor's order.
15          THE COURT:  If it is an automatic stay, then there is
16 nothing I can do, right?
17          MR. UNGER:  It is only for ten days and after ten days
18 regardless whether we filed an appeal or not the banks would be
19 entitled to release the funds.  What I am asking is that the
20 funds remain under restrained --
21          THE COURT:  No, that is denied.  I'm confident that
22 the ruling is correct.  If you want to appeal, file your appeal
23 within ten days and ask the Court of Appeals to extend the
24 stay.  I think that is more appropriate.  Then they can decide
25 whether they think there is sufficient merit to warrant
                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
                                                                    13
654YEXPC
1  granting a further stay.
2          MR. UNGER:  Thank you, your Honor.
3          The other item is in our papers we had asked for
4  certain discovery.  I understand your Honor has already ruled,
                          Page 6

654YEXPC.txt

5  but one of those items of discovery we had in mind to obtain
6  would be discovery as to whether or not Novel has complied with
7  the requirements of all foreign companies that register to do
8  business, and that would include filing a biannual information
9  statement and filing tax returns with the New York State
10  authorities, which I think is relevant, your Honor, to whether
11  or not the registration is actual and valid.
12          THE COURT:  No, it's not.  They are here, they got the
13  agent, they are registered, they concede they are subject to
14  jurisdiction, they are subject to jurisdiction.  There is
15  nothing further to have discovery of, point one.
16          Point two, we had an extensive argument of this two
17  days ago and nobody suggested to me that a decision on this
18  should be deferred pending some further discovery or that this
19  discovery is somehow necessary to resolve this issue.
20  Therefore, I went ahead and I resolved the issue.  It is
21  resolved, it is over and done with.
22          If there remains or is to remain some action in this
23  court on the merits, well, then you will be entitled to
24  whatever discovery you are entitled to on the merits.  It will
25  be the first occasion I am aware of where plaintiff tries to
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              14

654YEXPC

1  take discovering to prove it doesn't have jurisdiction in the
2  action.
3          If the underlying action is going to proceed, the
4  defendant has expressly consented to jurisdiction right here in
5  open court, and I -- I don't know if we actually discussed this,
6  but I think to the extent that we may be in a situation where
7  the defendant hasn't actually been served, you are waiving
8  service or accepting service or something, right?
9          MR. DUFFY:  Accepting service, your Honor.  We haven't
10  formerly filed an answer, but if it is necessary we will do so.
11          THE COURT:  So I don't think there is any issue
12  anymore as to the defendant's amenability to suit, and if there
13  is a suit to be had here, I'm not sure what that suit is since
14  both sides agree that the proper forum is London and the
15  defendant agrees to arbitrate in London.  Either you will go
16  there and do it or you will get an order compelling the
17  defendant to do it out of this court and I don't know what else
18  is left.
19          I mean, there is no claim by the plaintiff, as I
20  understand it, that this court should adjudicate the merits of
21  the dispute, there is only an issue whether the defendant has
22  to go to London and they are happy to go.
23          So I think there is nothing to have discovery about
24  and no case left, but as I say, if I misunderstand that in some
25  way you will let me know within ten days.  So while you are
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              15

654YEXPC

1  making up your mind to appeal, you can also make up your mind
2  about that.
3          But it seems to me and I think it has been clear from
4  the beginning, and this is not any criticism, nothing improper
5  about it, that this action was about getting the attachment.
6  The attachment has now been vacated and its time for some other
7  court if you want to bring it there to decide whether that's
8  correct or not.  But at the end of the day, I think it would be
9  irresponsible for me to grant a further stay because the whole
                          Page 7

654YEXPC.txt
10   point of this procedure is to decide whether there is a basis
11   for attaching the defendant's property.  I have decided that
12   there isn't and so they should be entitled to the use of their
13   property as soon as possible.  That's my view of it.
14         If it is somebody's view, higher authority and greater
15   wisdom that they shouldn't be entitled to the use of their
16   property, well, it's for that court to enter a stay and protect
17   its jurisdiction and do whatever it thinks is appropriate.  But
18   for my purposes, you know, if this order is automatically
19   stayed, fine, it is automatically stayed and that gives you the
20   opportunity to seek a further stay in the appropriate court.
21         All right.  I think we are done.
22         Thank you very much.
23                                   -  -  -
24
25

Page 8

# Exhibit E

# Unger Affirmation



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
DOC #: _____
DATE FILED: 9/11/07

---

CENTAURI SHIPPING, LTD.,

                Plaintiff,

  -v-

WESTERN BULK CARRIERS KS, WESTERN
BULK CARRIERS AS, and WESTERN BULK AS,

              Defendant.

Case No. 07 Civ. 4761 (RJS)

ORDER

---

RICHARD J. SULLIVAN, District Judge:

    The Court having conducted a post-attachment hearing pursuant to Supplemental

Admiralty Rule E(4)(f) on September 5, 2007 and having ruled on the record in open court on

September 7, 2007 that the Court's June 5, 2007 Ex Parte Order for Process of Maritime

Attachment and Garnishment and June 15, 2007 Order providing for the substitution of attached

funds with a surety bond be vacated on the basis that the technical requirements for issuance of

the June 5, 2007 Ex Parte Order pursuant to Supplemental Admiralty Rule B(1)(a) were not met

because the Defendant, Western Bulk Carriers K/S was, in fact, present in the District on June 5,

2007 for purposes of Supplemental Admiralty Rule B, both jurisdictionally, by virtue of its June

22, 2005 registration with the New York Secretary of State, Department of Corporations to

conduct business in the State of New York, and readily in terms of its amenability to accept

service of process by virtue of its June 22, 2005 appointment of a designated agent for service of

process within the District,

    IT IS ORDERED that the Court's June 5, 2007 Ex Parte Order for Process of Maritime

Attachment and Garnishment and June 15, 2007 Order providing for the substitution of attached

funds with a surety bond be and hereby are vacated;

IT IS FURTHER ORDERED that after the expiration of 10 days from the date this Order

is entered on the Court's docket the Plaintiff shall return to the Defendant, Western Bulk Carriers

K/S, the surety bond it posted on June 15, 2007;

IT IS FURTHER ORDERED that the Plaintiff shall advise the Court by September 17,

2007 if it intends to file an Amended Complaint setting forth a proper jurisdictional basis for its

claims in this Court.


Dated:        September 12, 2007
              New York, New York

                                        RICHARD J. SULLIVAN
                                        UNITED STATES DISTRICT JUDGE

Sep 7 hearing

1

```
7979CEND                    Decision
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   CENTAURI SHIPPING LTD.,
3
4                   Plaintiff,
4
5           v.                      07 CV 4761 (RJS)
5
6   WESTERN BULK CARRIERS KS, ET
6   AL.,
7
7                   Defendants.
8
8   ------------------------------x
9                                   New York, N.Y.
9                                   September 7, 2007
10                                  9:30 a.m.
10
11  Before:
11
12                  HON. RICHARD J. SULLIVAN,
12
13                                      District Judge
13
14                      APPEARANCES
14
15  LYONS & FLOOD, L.L.P.
15          Attorneys for Plaintiff
16  BY:  KIRK M.H. LYONS
16          JON WERNER
17
17  LENNON, MURPHY & LENNON, LLC
18          Attorney for Defendants
18  BY:  PATRICK F. LENNON
19
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

```
7979CEND                    Decision
1           (Case called)
2           THE DEPUTY CLERK:  If the parties could stated their
3   appearances for the record, please.
4           MR. LYONS:  Kirk Lyons and John Werner from Lyons &
5   Flood for plaintiff.
6           THE COURT:  Good morning.  I'm sorry.  I didn't --
7           MR. LYONS:  Jon Werner.
8           THE COURT:  Mr. Werner.
9           Good morning.
10          MR. WERNER:  Good morning.
11          MR. LENNON:  Good morning.  Patrick Lennon from
12  Lennon, Murphy & Lennon for the defendant, Western Bulk
13  Carriers KS.
```

```
                              Sep 7 hearing
14          THE COURT:  Good morning, Mr. Lennon.
15          Thank you both for coming in.
16          We last met on Wednesday.  We had pretty extensive
17   argument, and I had asked basically for a couple days to
18   consider the arguments, review the cases, review the facts, and
19   to try to come up with where I came out on this thing.
20          I'm prepared to do that unless there is anything you
21   want to handle preliminarily.
22          MR. LYONS:  None from plaintiff's side, your Honor.
23          MR. LENNON:  None for defendant, your Honor.
24          THE COURT:  I had contemplated issuing a written
25   opinion but I think in the interest of speed decided to just do
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    3
     7979CEND              Decision
1    it from the bench.  I will read portions of it.  I hope it's
2    all right.
3          I'll ready slowly.  Cites and things I can give you
4    copies of those as we go or afterwards.
5          This case is before the court on the defendants'
6    motion to vacate an order of maritime attachment that was
7    entered by Judge Karas on June 5 of 2007.  The case was
8    subsequently reassigned to me, and a hearing was conducted
9    pursuant to Supplemental Admiralty Rule E(4)(f) on September 5,
10   2007.  After considering the arguments presented at the hearing
11   as well as those set forth in the parties' extensive papers and
12   submissions, I hereby grant the defendants' motion and vacate
13   the June 5 attachment order.
14          By way of background, under Rule B of the Supplemental
15   Rules of Certain Admiralty and Maritime Claims, a plaintiff may
16   obtain an ex parte order authorizing attachment of defendants'
17   property upon the filing of a verified complaint praying for an
18   attachment and affidavit stating that to the best of
19   plaintiff's knowledge the defendant cannot be found within the
20   judicial district.  On June 5, plaintiff presented such a
21   verified complaint and affidavit to Judge Karas, who, accepting
22   the representations contained therein, issued the attachment
23   order at issue in this case.
24          Once its property had been restrained, the defendant
25   has the right under Rule E(4)(f) to appear before the district
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    4
     7979CEND              Decision
1    court to contest that attachment; whereupon the plaintiff must
2    show why the arrest or attachment should not be vacated or
3    other relief granted.  Under the Second Circuit's ruling in
4    Aqua Stoli Shipping Limited v. Gardner Smith, the plaintiff at
5    such a hearing bears the burden of demonstrating that:  One, it
6    has a valid prima facie admiralty claim against the defendant;
7    two, defendant cannot be found within the district; three, the
8    defendants' property may be found within the district; and
9    four, there is no statutory or maritime law bar to the
10   attachment.
11          In the instant action, the defendant challenges the
12   June 5 attachment order on three grounds.  First, defendant
13   asserts that the plaintiff's verified complaint failed to state
14   a valid prima facie admiralty claim and that the claim, styled
15   as a motion to enforce a money judgment entered by the Angolan
16   Supreme Court, was unripe.  Specifically, defendant argues that
17   no such judgment had been issued by the Angolan Court and that,
18   in fact, plaintiff had failed to even commence an action that
                              Page 2
```

Sep 7 hearing

19  might result in such judgment at the time of the attachment.
20        Second, defendant asserts that plaintiff failed to
21  demonstrate the second prong of the Aqua Stoli test, namely,
22  that the defendant could not be found within the Southern
23  District of New York.
24        Finally, defendant asserts that the attachment order
25  should be vacated as a result of the court's equitable
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

7979CEND                Decision
1   discretion to vacate maritime attachments that otherwise comply
2   with Rule B.  And I'm quoting from Aqua Stoli at 444.
3        Because I find that the defendant was, in fact, found
4   within the district at the time that the attachment order was
5   issued, I grant the defendants' motion to vacate the June 5
6   order without necessarily reaching the other two bases.  The
7   reasons for my finding are as follows.
8        Although the supplemental rules do not precisely
9   define what it means to be found within the district, the
10  Second Circuit has articulated a two-prong test designed to
11  facilitate the determination of whether defendant is, in fact,
12  found within the district for purposes of Rule B.  This test,
13  first enunciated in Seawind Compania, SA v. Crescent Line,
14  Inc., provides that the defendant is found within the district
15  if:  One, he's found within the district for purposes of
16  jurisdiction; and two, he's found within the district for
17  purposes of the service of process.  In essence, the Seawind
18  test requires that the defendant be both amenable to suit in
19  the district and readily susceptible to process in the
20  district.
21        Addressing the second prong first, there appears to be
22  no dispute that at the time the attachment was sought, the
23  defendant had a valid registered agent for service of process
24  in the Southern District of New York.  Accordingly, the parties
25  appear to concede that the defendant was readily susceptible to
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

7979CEND                Decision
1   process in the district, thereby satisfying the process prong
2   of Seawind.  I cited to plaintiff's memorandum of law at 7 and
3   8 and Mr. Lyons' affidavit in support thereof at paragraph 10.
4        However, the parties dispute whether the defendant was
5   present jurisdictionally under the first prong of the Seawind
6   test.  Although plaintiff concedes that at the time of the
7   attachment it was, in fact, aware that WBC was registered to do
8   business in the State of New York, and had a registered agent
9   for the service of process -- and that's Mr. Lyons' affidavit,
10  10 -- plaintiff nevertheless insists that a defendant may only
11  be found within the jurisdiction -- found within the district
12  for jurisdictional purposes if it engages in substantial
13  commercial activity within the district.  Relying principally
14  on Magistrate Judge Gorenstein's opinion in Erne Shipping v.
15  HBC Hamburg Bulk Carriers, plaintiff asserts that general
16  jurisdiction under New York law may be found only where a
17  defendant corporation's contacts with the district are
18  continuous and systematic, requiring inquiry into "Whether the
19  company has an office in the state, whether it has any bank
20  accounts or other property in the state, whether it has a phone
21  listing in the state, whether it does public relations work
22  there, and whether it has individuals permanently located in
23  the state to promote its interests."  That's plaintiff's
Page 3

Sep 7 hearing
```
24   memorandum at 9.  Applying these factors to the defendant,
25   plaintiff contends that WBC's contacts "taken as a whole are
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

7979CEND                  Decision
```
1    insufficient to establish a jurisdictional presence in New
2    York" thereby defeating WBC's motion to vacate the attachment
3    on the basis that WBC is not present in New York in the
4    jurisdictional sense.  That's also plaintiff's memorandum at 10
5    and 11 and 13.
6           I reject this argument as inconsistent with the Second
7    Circuit's opinion in Seawind.  Like Judge Lynch in Express Sea
8    Transport Corp. v. Novel Commodities SA, 06 CV 2404, cited in
9    the defendants' brief, I reiterate that the key inquiry
10   relating to the jurisdictional prong of the Seawind test is
11   whether the defendant is amenable to suit within the district.
12   Although such amenability may at times be demonstrated tacitly
13   through the existence of continuous and systematic contacts
14   such as those described by plaintiff, such contacts are by no
15   means the only method of demonstrating a defendant's
16   jurisdictional presence in the district.  In fact, the language
17   and context of Seawind suggests that inquiry into the
18   intra-district activities of the defendant is most relevant
19   perhaps as a default in the absence of more explicit
20   manifestations of jurisdictional acquiescence.  Here, there is
21   no dispute that the defendant is and was at all times relevant
22   to the attachment a registered foreign corporation within the
23   State of New York.  As such, defendant, under New York law, has
24   consented to jurisdiction in the courts of this state.  And I
25   cite New York Business Corporations Law 1304 through 1314.  The
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

7979CEND                  Decision
```
1    defendant, by the way, explicitly consented or rather conceded
2    as much at oral argument on Wednesday.
3           The suggestion that Rule B and the jurisdictional
4    prong of Seawind somehow require more than this so that they
5    would require the court to ignore defendants' explicit consent
6    to jurisdiction in this district in favor of a more cumbersome
7    and unwieldy balancing test of intra-district commercial
8    activity I believe flies in the face of common sense and is not
9    required by Seawind.
10          Having determined that defendant was both amenable to
11   suit in the district and readily available to accept service of
12   process in the district, I conclude the defendant meets both
13   prongs of the Seawind test.  Accordingly, I find the defendant
14   was, in fact, found in the district under Rule B and that the
15   June 5 attachment order must be vacated.  As a necessary
16   corollary, I also vacate Judge Karas' June 15 order in which he
17   approved the parties' stipulation to substitute a bond for the
18   attached funds.
19          Although defendants' motion also requested the
20   dismissal of the complaint in this matter, I believe that the
21   parties agreed at oral argument that there may be at least
22   potentially a basis for this action to continue even though the
23   attachment order has been vacated.  I leave that for the
24   plaintiff and plaintiff's counsel to consider, and I will grant
25   plaintiffs ten days in which to amend the complaint if they so
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

Sep 7 hearing
7979CEND              Decision
1  choose, ten days from today.
2          Now, as was brought out during the September 5 hearing
3  and in the written submissions made in connection with this
4  motion, the verified complaints and the supporting affirmation
5  of this case contained what I consider to be serious
6  misstatements of fact that to my mind require further comment
7  and action by the court, which brings me to the second portion
8  of my ruling, and I think requires a further discussion of the
9  facts leading up to the issuance of the June 5, 2007
10 attachment.
11         On June 5, 2007, plaintiff, proceeding ex parte,
12 presented to U.S. District Judge Kenneth M. Karas, a writ of
13 maritime attachment and garnishment and verified complaint.
14         They sought to attach more than fifteen million
15 dollars of the defendants' funds. Accompanying the attachment
16 was an affirmation by counsel, Mr. Lyons. And in the second
17 paragraph of that affirmation, which was signed by Mr. Lyons
18 under the penalty of perjury, the affirmation read as follows:
19 "Your affiant has attempted to locate the defendants, Western
20 Bulk Carriers KS, Western Bulk AS, and Western Bulk Carriers AS
21 within the district. As part of the investigation, my office
22 has contacted the Division of Corporations of the New York
23 Department of State and found no records indicating that
24 defendants were either incorporated or licensed to do business
25 in the State of New York." That's at paragraph 2 of the
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                      10

7979CEND              Decision
1  affirmation.
2          Pursuant to Supplemental Admiralty Rule B(1) of the
3  Federal Rules of Civil Procedure, Judge Karas signed
4  plaintiff's attachment. Plaintiffs thereupon proceeded to
5  attach the defendants' funds and on June 15, 2007 the parties
6  entered into a stipulation to substitute a bond for the
7  attached funds.
8          In August, 2007, defendants requested a
9  post-deprivation hearing pursuant to Rule of Civil Procedure --
10 well, Supplemental Admiralty Rule E(4)(f). The parties briefed
11 their positions. And on September 5 of 2007 I held a hearing
12 on the defendants' application to vacate the attachment. Among
13 other things, the defendants argued, as I noted before, that
14 the attachment should be vacated because the defendants could
15 be found in the district within the meaning of Supplemental
16 Rule B(1)(a). Specifically, defendants argue that contrary to
17 the assertions set forth in Mr. Lyons' June 5 affirmation, they
18 had, in fact, been registered with the New York State
19 Department of Corporations to conduct business in New York as a
20 foreign limited partnership since June 22, 2005.
21         I'm citing the memorandum of law in support of the
22 defendants' motion to vacate the maritime attachment, 3, 4, and
23 page 10 through 15.
24         Defendants also noted that they had retained a
25 registered agent in New York to accept service of legal
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                      11

7979CEND              Decision
1  process.
2          In response to defendants' claims that they could be
3  found in the district, plaintiff offered a mea culpa -- that's
4  plaintiff's term, not mine -- acknowledging that it had made a
                              Page 5

Sep 7 hearing
5  misstatement to the court in that it failed to disclose that
6  defendant was, in fact, registered to do business in the State
7  of New York and had a registered agent for the service of legal
8  process within the district.
9          And I'm quoting the memorandum of law in opposition to
10 the motion to vacate, that's plaintiff's memorandum of law at
11 6.
12         Insisting that the misstatement was at most a harmless
13 error, plaintiff attributed the misstatement in Mr. Lyons' ex
14 parte affirmation to a "clerical error" occasioned by
15 plaintiff's use of "a pro forma Rule B(1) affirmation in
16 support of the application for an attachment order" that
17 plaintiffs failed to "revise to properly reflect the results of
18 our investigation."  That's Mr. Lyons' affirmation in support
19 of the opposition motion at paragraph 10.
20         I find that the facts surrounding plaintiff's
21 misstatements suggest otherwise and are highly troubling.  In
22 the first place, it should be noted that it was not until
23 August 16 of 2007, more than two months after the issuance of
24 an ex parte attachment order that totaled more than fifteen
25 million dollars, that plaintiff first notified the court that
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              12

7979CEND           Decision
1  its affirmation in support of the attachment was inaccurate.
2          Second, counsel's euphemistic characterization of the
3  misstatement as a clerical error seems wholly inconsistent with
4  the record developed before and during the September 5 oral
5  argument in this matter.  For example, in Mr. Lyons'
6  affirmation in opposition to defendants' motion to vacate the
7  attachment, he acknowledged that at the time the initial
8  affirmation was submitted to Judge Karas, "Plaintiff was, in
9  fact, aware that WBC was registered to do business in the State
10 of New York and had a registered agent for the service of
11 process."  That's paragraph 10 of the affirmation of Mr. Lyons.
12         At oral argument Mr. Lyons reaffirmed this fact,
13 conceding that at the time he signed the affirmation presented
14 to Judge Karas, he was, in fact, aware that the defendants were
15 registered in New York and had an agent to accept legal process
16 in New York.
17         Indeed, Mr. Lyons went even further, stating that he
18 and his cocounsel had actually researched whether registration
19 to do business in New York and having an agent to accept
20 process was sufficient to be found within the district.  And he
21 did this research before he signed the affirmation accompanying
22 the attachment.  Counsel stated that it was their conclusion
23 that it was not sufficient to be found in the district.
24         In light of the knowledge and forethought apparently
25 expanded on this issue prior to plaintiff's submission of the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              13

7979CEND           Decision
1  affirmation in this matter, I find it all but inconceivable
2  that counsel could have signed an affirmation under penalty of
3  perjury asserting, as I noted before, that the affiant had
4  attempted to locate the defendants in the district and that as
5  part of the investigation counsel's office had contacted the
6  Division of Corporations of the New York Department of State
7  and found no records indicating that defendants were either
8  incorporated or licensed to do business in the State of New
9  York.
                            Page 6

Sep 7 hearing

10       Indeed, the only two possible explanations that come
11  to mind for me are these:  Either counsel signed a crucial ex
12  parte affirmation without reading it in even the most cursory
13  fashion; or worse, counsel deliberately submitted an affidavit
14  which he knew to be false and materially misleading to the
15  court.  Although the latter conclusion is far more serious,
16  each is gravely troubling, particularly in the context of an ex
17  parte proceeding involving significant sums of money and
18  implicating important and fundamental due process rights.  In
19  any event, under no circumstances to my mind could the
20  misstatement at issue here be blindly dismissed as a clerical
21  error.
22       Equally disturbing to me is the fact that
23  notwithstanding plaintiff's mea culpa, plaintiff nevertheless
24  insists that the misstatement contained in the affirmation was
25  a harmless error and that the June 5 attachment would have

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

7979CEND             Decision

1  appropriately issued even if plaintiff had not misstated the
2  facts about defendants' presence in the district.  Obviously,
3  that is not a determination that plaintiff's counsel is
4  entitled to make.  Moreover, plaintiff conceded at oral
5  argument that the information omitted by plaintiff's counsel in
6  the affirmation could have been determinative of whether a
7  judge of this court would have signed the attachment.  In light
8  of that concession, not to mention this court's prior ruling
9  today, in which it, in fact, vacated the June 5 attachment
10  order on precisely those grounds, it seems safe to say that
11  counsel's confidence in the harmlessness of the misstatements
12  at issue was highly misplaced.  I would also suggest that the
13  facts presented here would arguably justify vacatur of the June
14  5 order as an exercise of the Court's equitable discretion
15  generally recognized by the Second Circuit in Aqua Stoli and
16  other maritime cases, though, as I mentioned before, it was not
17  necessary to reach that finding for purposes of the motion to
18  vacate.
19       Finally, I would note that if fifteen million dollar
20  ex parte maritime attachments have now become so routine, so
21  automatic, and so perfunctory as to render the supporting
22  affirmations mere pro forma documents not worthy of being read
23  before they are signed, or that misstatements of the sort at
24  issue here can be brushed aside as mere clerical errors that
25  are simply harmless in nature, then I must consider this entire

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

7979CEND             Decision

1  area of law may have gotten off the rails, to the detriment of
2  the defendants and the court.
3       Rule B is a powerful and in some ways unprecedented
4  tool available to plaintiffs in maritime actions.  There are
5  good reasons for it.  But, it is premised on the assurance that
6  plaintiffs and their counsel will act with care and candor in
7  ex parte proceedings with the court.  That clearly did not
8  happen here.
9       Be that as it may, I believe that the conduct of
10  counsel in this case requires further action by the court.
11  Regardless of whether plaintiff's counsel was careless or
12  deliberately misled the court, the result was the same.  The
13  court issued an ex parte order attaching more than fifteen
14  million dollars of defendants' assets based on the affirmation

Page 7

Sep 7 hearing
15    which plaintiff's counsel now admits was false, at least in
16    part.
17            In light of these facts, plaintiff is hereby ordered
18    to show cause why the court should not impose sanctions,
19    payable to the court, on plaintiff's counsel under Federal Rule
20    of Civil Procedure 11(b) for submitting an affirmation to the
21    court, Judge Karas in this case, that plaintiff's counsel knew
22    or should have known was materially false, at least in part.
23    And I would cite the Federal Rule of Civil Procedure
24    11(c)(1)(B) and also the Second Circuit's ruling in Baffa v.
25    Donaldson, Lufkin & Jenrette Securities Corp., at 222 F.3d 52,
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

⬜                                                                16

7979CEND                    Decision
1     at 57, Second Circuit, 2000.
2             Plaintiff's memorandum of law is due no later than
3     September 28, 2007.  That's two weeks from today.
4             Defendants' counsel, Mr. Lennon, is invited, but not
5     required, to submit its own memorandum on or before that date.
6             As a concluding comment, let me just say, I derive no
7     satisfaction in issuing an order to show cause in this case,
8     and I don't do it lightly.
9             Mr. Lyons, I don't know you.  I met you on Wednesday
10    for the first time.  You struck me as a decent man and a very
11    capable lawyer.  I was impressed by the quality of the papers
12    you submitted.  I was impressed by the quality and
13    sophistication of the legal arguments that you made at the
14    hearing.  I want to assure you, I have not made up my mind with
15    regard to the Rule 11 sanctions issue.  I'm keeping an open
16    mind and I intend to read your submissions very carefully and
17    with great attention.  I have to admit, however, that I find
18    that the affirmation that was submitted in support of the
19    June 5 attachment order to have been, at best, so careless and
20    so negligent as to border on an abdication of your duties as an
21    officer of the court.
22            As I just mentioned, that is arguably the best gloss
23    one can put on it.  But under these circumstances, I feel I
24    have no choice but to issue this order to show cause and
25    consider the Rule 11 sanctions.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

⬜                                                                17

7979CEND                    Decision
1             Again, I intend to keep an open mind.  I really do
2     hope you'll persuade me that they are not warranted here, but I
3     think on these facts and on this record I have no choice.
4             That's all I have to say.  Unless there are other
5     matters we need to cover, we are adjourned.
6             MR. LENNON:  Your Honor, I'd just like to add a couple
7     of comments about the second portion of your decision on the
8     order to show cause.  And I can only say, based on my
9     relationship with Mr. Lyons over many, many years, that this is
10    completely an out-of-character incident for him.  We've had
11    countless, countless cases together.  And when it came to light
12    that this affidavit was incorrect, which only came to my
13    attention on the 10th of August, which is the first date that
14    we actually attempted to file the motion, I was surprised.  And
15    I can tell from you speaking with Mr. Lyons that he, at that
16    time when he first realized the mistake himself.
17            I'm not offering that as an excuse.  I take fully and
18    seriously the comments you made about the impact of that
19    affidavit in terms of a lawyer's obligations.
                          Page 8

Sep 7 hearing
```
20          But I do want to add those comments to the court in
21     terms of your consideration of the order to show cause because
22     this is not, to my knowledge and my experience with Mr. Lyons,
23     in keeping with his character and reputation as a lawyer in
24     this bar.
25          THE COURT:   I appreciate that, and I certainly credit
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
                                                            18
```
       7979CEND                  Decision
1      it.  And as I said, I haven't made up my mind on this.  And
2      this is, obviously, not personal because my own observations of
3      Mr. Lyons were very positive.  But I'm troubled at a state of
4      affairs where an affidavit like that gets presented to a judge
5      on what is not a small matter.  This is not a certificate of
6      service demonstrating that a brief was served on an opposing
7      party or that somebody received an innocuous document.  This is
8      a fifteen million dollar attachment that in effect was in place
9      for three months, in an ex parte proceeding where the judge is
10     relying on the statement of counsel in the affirmation in
11     making a determination of an attachment.  It is a serious,
12     serious matter.  And so, I just think I have an obligation to
13     follow up along the lines I've suggested.
14          MR. LENNON:   I'm not disagreeing with your Honor.  In
15     fact, some of those comments are arguments that we made in our
16     papers as well.  So I appreciate that.
17          I just wanted to share my thoughts about the situation
18     before the order to show cause comes on for decision.
19          THE COURT:   Thank you, Mr. Lennon.  I appreciate that.
20          Mr. Lyons, you'll have an opportunity to think about
21     this and submit something in writing.  But, I do want to hear
22     from you if you want to be heard.
23          MR. LYONS:   No.  I have no comments at this time, your
24     Honor.  I'll save that for the order to show cause.
25          THE COURT:   Thank you.  Anything else we need to cover
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
                                                            19
```
       7979CEND                  Decision
1      today, gentlemen?
2          MR. LENNON:   Your Honor, I think the only point of
3      clarification I would request with respect to the first part of
4      the court's decision is with regard to return of the bond.
5          One of the things we did request as part of the motion
6      to vacate is that if the court did grant the motion, that the
7      bond be ordered to be returned, which I think is a necessary
8      part of the process.
9          THE COURT:   Yes.  I think that's right.  And I think I
10     alluded to that in suggesting that as a corollary to the
11     vacatur of the attachment order, I would also be vacating the
12     June 15 order of Judge Karas.  But I think I should be more
13     explicit.  So I thank you for that.
14          Yes.  I would order that the bond be returned -- or
15     how do you style it?
16          MR. LENNON:   Just the return of the bond.
17          THE COURT:   Okay.  Mr. Lyons, do you object to that?
18          MR. LYONS:   The only requirement, your Honor, there's
19     a ten-day automatic stay in respect of your decision and
20     vacation of the attachment.  That gives us an opportunity to
21     decide whether we want to appeal.  We have the right to appeal
22     your decision.
23          THE COURT:   Understood.
24          MR. LYONS:   So there's an automatic ten-day stay.  And
```
                            Page 9

Sep 7 hearing
25    then there's an opportunity, and we probably will file a motion
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

7979CEND                    Decision
 1    to stay the -- your decision pending appeal.
 2             So, I would ask that we not have to return the bond
 3    until after at least the ten-day automatic stay.
 4             THE COURT:  I don't think we've discussed really this,
 5    but Mr. Lennon you want to respond to that?
 6             MR. LENNON:  I have no problem with that position.
 7    I've taken that same position myself.
 8             THE COURT:  Understood.  All right.
 9             And that should be reflected in the order of the
10    court.
11             Anything else we need to cover today gentlemen?
12             MR. LENNON:  No.  Thank you, your Honor.
13             MR. LYONS:  No.  Thanks, your Honor.
14             THE COURT:  Thank you all very much.
15             You know, I'm talking to Mr. Hernandez, and he
16    suggests maybe I should invite the parties or Mr. Lennon to
17    submit a proposed order for the return of the bond that I can
18    then execute.
19             MR. LENNON:  I will do that, your Honor.  Is it okay
20    if I submit that by fax?
21             THE COURT:  That's fine.  Yes.
22             MR. LENNON:  I'll get the fax number at the end of the
23    hearing.
24             (Adjourned)
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# Exhibit F

## Unger Affirmation

**NYS Department of State**                                            **Counsel's Office**

# Legal Memorandum CO01
## "DOING BUSINESS" IN NEW YORK:
## AN INTRODUCTION TO QUALIFICATION

### General Guidelines

Certain organizations formed outside New York may not do business in New York until authorized to do so. Called "foreign," whether formed in another state of the United States or in another country, such organizations include for-profit and not-for-profit corporations, limited liability companies, and limited partnerships. *See generally*, Business Corporation Law §§ 1301 - 1320 (for-profit corporations), Limited Liability Company Law §§ 801 - 809 (limited liability companies), Not-for-Profit Corporation Law §§ 1301 - 1321 (not-for-profit corporations), and Partnership Law § 121-901 - 121-908 (limited partnerships). (For simplicity and for reasons of history, much of this discussion will refer to corporations. In context, such a reference should be taken as including other forms.) The requirement to obtain authority to do business exists to protect domestic organizations from unfair competition and to place domestic and foreign organizations on an equal footing. "Fairness and justice require that when a foreign corporation comes into our State to conduct business under similar methods and to the same degree it does in its own state, or as do our domestic corporations, that such a corporation should be subject to New York laws and regulations as a recompense for the advantages enjoyed by it." *William L. Bonnell Co. v. Katz*, 23 Misc.2d 1028, 1031, 196 N.Y.S.2d 763, 768 (Sup. Ct. 1960).

Organizations obtain authority to do business in New York by making a filing, an "application for authority," in the Department of State. The effect of an application for authority is twofold: the organization acknowledges that it considers itself to be doing business in the state, and it facilitates legal and administrative proceedings by specifying in the application for authority where and in what manner the organization may be served with process. The application for authority does not subject the foreign organization to any substantive regulation that does not also apply to a foreign organization doing business without authority.The consequence of doing business without authority is that the organization may not affirmatively use New York courts until it obtains authority and pays all arrears in fees, penalties, and taxes.

The ability of a state to require a foreign corporation to apply for authority (or "to take out a license" or "to qualify") traces to *Paul v. Virginia*, 75 U.S. (8 Wall.) 168 (1868). It holds that only natural persons are "citizens" within the meaning of the Privileges and Immunities Clause. U.S. Constitution art. IV, § 2. From this it follows that a state has the power to exclude a foreign corporation from doing intrastate business within its borders. However, no state may exclude or condition admission of a foreign corporation that engages solely in interstate or foreign commerce. The Commerce Clause, U.S. Constitution art. I, § 8, cl. 3, commits to Congress, and impliedly withholds from states, the power to regulate interstate and foreign commerce. Holding that a corporation engaged in interstate commerce need not comply with a foreign corporation statute, the U.S. Supreme Court said, "A corporation of one state may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of [interstate] commerce; and any statute of the latter state which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause." *Dahnke-Warner Milling Co. v. Bondurant*, 257 U.S. 282, 290 (1921). *See also, International Textbook Company v. Tone*, 220 N.Y. 313, 115 N.E. 914 (1917) ("We have steadily upheld the right of foreign corporations, without aid of any license, to engage in activities incidental to commerce between the states." 220 N.Y. at 318.).

Whether an organization is "doing business" sufficient to require it to qualify is often the source of

confusion. In part this is because we tend no longer to think about organizations, especially corporations, in the same way as do the historical cases. Another source of confusion is the fact that Business Corporation Law § 1301(b) and its analogs do not define doing business; they contain only a nonexclusive list of what does not constitute doing business. (See the discussion below.) Yet more confusion stems from use of the same term, "doing business," in two other separate, but related, contexts: whether a corporation's activities in a state are sufficient to subject it to personal jurisdiction and whether a corporation's presence within a state requires it to pay taxes. Before any further discussion of qualification, some discussion of these other uses of the term is worthwhile.

The power of New York courts to subject a foreign corporation to personal jurisdiction because it is "doing business" in the state derives from case law. Courts continue to exercise the power by virtue of Civil Practice Law and Rules § 301. In this sense of the term, "a foreign corporation is amenable to suit in New York courts if it is 'engaged in a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction'." *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 227 N.E.2d 851, 281 N.Y.S.2d 21 (1967) quoting *Simonson v. International Bank*, 14 N.Y.2d 281, 285, 200 N.E.2d 427, 429, 251 N.Y.S.2d 433, 436 (1964). *See also, Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 77 N.Y.2d 28, 565 N.E.2d 488, 563 N.Y.S.2d 21 (1990). This test of "doing business" is a simple and pragmatic one, which varies in its application depending on the particular facts of each case. *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 432, 208 N.E.2d 439, 441-2, 260 N.Y.S.2d 625, 629 (1965). *See*, D. Siegel, *New York Practice*, §§ 82, 83. A court must be able to say from the facts that the corporation is present "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917).

The traditional test of doing business for purposes of CPLR § 301 is more demanding than that for longarm jurisdiction under CPLR § 302(a)(1). CPLR § 302 discards the traditional concept of doing business for a broader standard, that of transacting any business. It also abandons the requirement of the defendant's "presence." However, even CPLR §302 fails to exhaust the full jurisdictional potential permissible under the due process clause of the federal constitution. *See Simonson v. International Bank, supra, and Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965). The classic statement of that principle is that for a state to assert jurisdiction the defendant must have "certain minimum contacts . . . such that the maintenance of suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316; 66 S.Ct. 154, 158, 90 L. Ed. 95 (1945). A party subjects itself to jurisdiction consistent with traditional notions of fair play and substantial justice when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denkcla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Conducting activities without the state that are purposefully directed at the forum state also satisfies the constitutional standard. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being brought into court there. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 1000 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Constitutional limitations on the authority of a state to collect taxes from a foreign business engaged in interstate commerce derive from two sources. The first is the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, pertaining the jurisdiction to tax. *Wisconsin v. Penney Co.*, 311 U.S. 435, 445, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940). For a state to validly tax an interstate commercial activity, it must have "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-5, 74 S.Ct. 535, 538, 98 L.Ed.2d 744 (1953).

The second source is the Commerce Clause. *Complete Auto Transit v. Brady*, 430 U.S. 274, 287-9, 97 S.Ct. 1076, 1083-84, 51 L.Ed.2d 326 (1977) outlines the Commerce Clause approach to taxation issues. It sets out a four-pronged standard for determining the validity of a state tax on interstate commercial activity: (1) The taxed activity must have a substantial nexus with the taxing jurisdiction; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to the services provided by the state. 430 U.S. at 279, 97 S.Ct. at 1079. This analysis, with some modification, is still followed. *See, National Geographic v. California Equalization Board*, 430 U.S. 551, 97 S.Ct. 1386, 51 L. Ed.2d 631(1977), *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed. 336 (1979), *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), and *Oklahoma Tax Commission v. Jefferson Lines*, 514 U.S. 175, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). *See also, Homier Distributing Co., Inc. v. City of Albany*, 90 N.Y.2d 153, ___ N.E. 2d ___, 656 N.Y.S. 2d 223 (1997), *Matter of Orvis Co. v. Tax Appeals Tribunal*, 86 N.Y.2d 165, 654 N.E.2d 954, 630 N.Y.S.2d 690 (1995), *cert. den.* 64 U.S.L.W. 2012, 116 S.Ct. 518, and *Ontario Trucking Association v. Department of Taxation and Finance*, 168 Misc. 2d 648, 640 N.Y.S. 2d 377 (1996).

Debating whether the jurisdictional doing business test and the taxation doing business test are the same is not necessary nor fruitful here. What is important is that it takes a higher level of contact to invoke the qualification requirement. *Invacare Corp. v. John Nageldinger & Son, Inc.*, 576 F. Supp. 1542 (E.D.N.Y. 1984), *Storwal International, Inc. v. Thom Rock Realty Co., L.P.*, 784 F. Supp. 1141 (S.D.N.Y. 1992). It follows that if an organization is not doing business that subjects it to jurisdiction or taxation, it is not doing business that requires qualification. Conversely, by qualifying an organization concedes that it is subject to jurisdiction and taxation. Above the jurisdiction and taxation minimum contacts, however, not all business activity engaged in by a foreign organization rises to "doing business" in the qualification sense *Von Arx, A.G. v. Breitenstein*, 52 A.D.2d 1049, 384 N.Y.S.2d 895 (4th Dept. 1976), *aff'd* 41 N.Y.2d 958, 363 N.E.2d 582, 394 N.Y.S.2d 876 (1977).

Lending support to the assertion that more is necessary for qualification purposes are the cases that articulate the test as one of corporate continuity of conduct here. *Penn Collieries Co. v. McKeever*, 183 N.Y. 98, 75 N.E. 955 (1905) (To be "doing business in this State" implies corporate continuity of conduct in that respect. 183 N.Y. at 103), *International Fuel & Iron Corp. v. Donner Steel Co.*, 242 N.Y. 224, 151 N.E. 214 (1926) ("[T]he foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose." 242 N.Y. at 230). For the qualification requirement to apply, the local or intrastate contacts with New York must be permanent, continuous, and regular. *Netherlands Shipmortgage Corp. v. Madia*, 717 F.2d 731, 1984 A.M.C. 141, 72 A.L.R. Fed. 562 (2d Cir. 1983) ("New York courts have repeatedly and recently affirmed the vitality of this standard which requires the intrastate activity of a foreign corporation to be permanent, continuous, and regular for it to be doing business in New York. [Citations omitted.]"). *See also, Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974); *cf. Eli Lilly & Co. v. Sav-On Drugs, Inc.*, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961). Put another way, "[t]he 'more' that is required for section 1312 of the Business Corporation Law lies not in the quantum but rather in the nature of the business in New York." *Paper Manufacturers Co. v. Ris Paper Co.*, Inc., 86 Misc.2d 95, 98, 381 N.Y.S.2d 959, 963 (Civ. Ct. 1976).

Statute offers little guidance on the nature of the business required for qualification. For example, Business Corporation Law § 103(b) provides, "This chapter applies to commerce with foreign nations and among the several states, and to corporations formed by or under any act of congress, only to the extent permitted under the constitution and laws of the United States." However, as the preceding discussion shows, that is a truism. Beyond that, Business Corporation Law § 1301(b) and its analogs offer only nonexclusive lists of activities that do not constitute doing business. As a class these are

activities that have to do with maintaining the organization's status as an entity. Examples include holding meetings of owners or managers, maintaining bank accounts, and defending actions and proceedings.

Most of the law of "doing business" is found in the decisions of courts. Those cases afford no precise measure of the extent of the activities which may be determinative of whether a foreign organization is doing business in New York for purposes of qualification. Each case must be decided on its own facts. *William L. Bonnell Co. v. Katz*, 23 Misc.2d 1028, 196 N.Y.S.2d 763 (Sup. Ct. 1960). Besides the requirements that activities exhibit local or intrastate character and be permanent, continuous, and regular, a third general factor emerges from those decisions-- the relationship of the activity to the ordinary and regular business of the organization. If the activity is vital and essential to the organization's business, it will have to qualify. If the activity is merely incidental to that business, it will not. *Cummer Lumber Co. v. Associated Manufacturers Mutual Fire Insurance Corp.*, 67 App.Div. 156, 156, 73 N.Y.S. 668, 671 (2d Dept. 1901), *aff'd mem.* 173 N.Y. 633, 66 N.E. 1106 (1903), *Penn Collieries Co. v. McKeever, supra.* The court in *Invacare Corp. v. John Nageldinger & Sons, Inc.*, 576 F. Supp. 1542 (E.D.N.Y. 1984), regarded *Parkwood Furniture Co. v. OK Furniture Co.*, 76 A.D.2d 905, 429 N.Y.S.2d 240 (2d Dept. 1980) and *Colonial Mortgage Co. v. First Federal Savings and Loan Association*, 57 A.D.2d 1046, 395 N.Y.S.2d 798 (4th Dept. 1977) as examples by which to judge other fact patterns.

This article discussed the general guidelines that inform the cases on doing business in New York for purposes of qualification. For further reading see Note, *Foreign Corporations: What Constitutes Doing Business Under New York's Qualification Statute?*, 44 Fordham Law Review 1042 (1976) and Annotation, *What Constitutes Doing Business Within State for Purposes of State "Closed-Door" Statute Barring Unqualified or Unregistered Foreign Corporation from Local Courts - Modern Cases*, 88 A.L.R. 4th 466 (1991).

February 2000

---

[ Home ] [ Counsel's Office Menu Page ] [ Legal Memoranda - Corporations ]