222-08/MEU
FREEHILL HOGAN & MAHAR, LLP
80 Pine Street
New York, NY  10005
(212) 425-1900
(212) 425-1901 fax

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MINMETALS SHIPPING & FORWARDING CO. LTD.,

                Plaintiff,

       - against -

HBC HAMBURG BULK CARRIERS, GMBH & CO. KG,

               Defendant.
------------------------------------------------------------------------x

08 CIV 3533 (RWS)


**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO VACATE ATTACHMENT**


Of Counsel:
Michael E. Unger (MU 0045)


NYDOCS1/303660.1

## PRELIMINARY STATEMENT

Defendant HBC HAMBURG BULK CARRIERS, GMBH & CO. KG. (hereinafter "HBC"), by and through undersigned counsel Freehill, Hogan & Mahar, LLP, respectfully submits this Reply Memorandum of Law in further support of its motion filed pursuant to Supplemental Rule E(4)(f) of the Federal Rules of Civil Procedure for an Order vacating the *ex parte* Order authorizing issuance of the Process of Maritime Attachment and Garnishment ("PMAG") improperly obtained by Plaintiff MINMETALS SHIPPING & FORWARDING CO. LTD., (hereinafter "MINMETALS") pursuant to Supplemental Rule B, directing the release of funds restrained pursuant to the PMAG and dismissing the Verified Complaint.

MINMETALS, in support of its initial application for the Rule B attachment, submitted the Affidavit of its counsel attesting that HBC was not "found" within the Southern District of New York based on inquiries into whether HBC maintained a telephone listing, whether HBC was registered with the New York Department of State to do business in New York, and whether the internet indicated that HBC had a presence in New York. Only after HBC notified MINMETALS that HBC was, in fact, "found" in the Southern District by virtue of its registration with the New York Department of State, Division of Corporations and designation of its agent to accept service of process within the Southern District did MINMETALS submit these material facts to the Court in the Affidavit of its counsel in support of Plaintiff's application for an Order directing the issuance of an Amended PMAG increasing the amount of the attachment. Not only did MINMETALS fail to call the Court's attention to its misrepresentation of the material facts in its initial application, it also failed to disclose the existence of contrary authority by Judges Lynch and Sullivan which hold that such registration and designation deems a corporation "found" within the Southern District for purposes of Rule B. Crucially, pursuant to

the improperly issued Amended PMAG which authorizes the attachment of HBC's property up to $2,710,928, MINMETALS has proceeded to attach HBC's property well in excess of $5,000,000. Accordingly, for all of the reasons contained in HBC's motion papers, HBC respectfully submits that the attachment should never have been issued and should be vacated.[1]

## ARGUMENT

### POINT I

### HBC WAS "FOUND" WITHIN THE DISTRICT AT ALL TIMES RELEVANT TO THE ATTACHMENT

A statutory predicate to maritime attachments under Rule B is that the defendant cannot be "found" within the District. As discussed in HBC's moving papers, what it means to be "found" is not defined in the Rule itself; thus, courts follow the Second Circuit two-part test which requires that the defendant have sufficient contacts with the district to meet minimum due process standards and can be served with process within the district. *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002). Since MINMETALS concedes that HBC can be served with process within the Southern District, the only inquiry before the Court is whether HBC is "found" in the "jurisdictional" sense.

A.    **HBC is Subject to the Court's Personal Jurisdiction By Virtue of Its Registration**

The law in New York is well-settled that a corporation registered to do business in New York is subject to the personal jurisdiction of the New York courts. *Iyalla v. TRT Holdings, Inc.*, 2005 U.S. Dist. LEXIS 14913 (S.D.N.Y. 2005) (*citing, Cannon v. Newmar Corp.*, 210 F. Supp. 2d 461, 463 n.2 (S.D.N.Y. 2002); *Augsbury Corp. v. Petrokey Corp.*, 97 A.D.2d 173, 175, 270 N.Y.S.2d 787, 789 (3d Dept. 1983) (stating that "authorization to do business in the State and

---

[1] HBC does not "concede" as claimed by MINMETALS that Plaintiff has a "valid prima facie admiralty claim" against HBC.

concomitant designation of the Secretary of State as its agent for service of process pursuant to

Section 304 of the Business Corporation Law is consent to personal jurisdiction which has been

found to satisfy due process"). In *Speed v. Pelican Resort N.V.*, 1992 U.S. Dist. LEXIS 8278, at

*2 (S.D.N.Y. June 12, 1992), Judge Kram observed:

> Both this Court and the New York State courts have consistently
> held that a foreign corporation which registers under BCL §304
> and establishes the Secretary of State as its agent upon whom
> process may be served under BCL § 304, has consented to personal
> jurisdiction in the State of New York. *Augsbury Corporation v.
> Petrokey Corporation*, 97 A.D.2d 173, 176, 470 N.Y.S.2d 787, 789
> (3d Dept. 1983) (holding that "the privilege of doing business in
> New York is accompanied by an automatic basis for personal
> jurisdiction" and that authorization to do business accompanied by
> the requisite designation of the Secretary of State constituted "the
> privilege"); *Robfogel Mill-Andrews Corporation v. Cupples Mfrs.
> Co.*, 67 Misc.2d. 623, 323 N.Y.S.2d 381 (N.Y. Sup. Ct. 1971);
> *Advance Realty Associates v. Krupp*, 636 F. Supp. 316 (S.D.N.Y.
> 1986) (registration pursuant to BCL § 304 confers jurisdiction,
> regardless of the actual volume of business done there);
> *Amalgamet, Inc. v. LeDoux & Co.*, 645 F. Supp. 248, 249
> (S.D.N.Y. 1986) (citing *Augsbury*, 97 A.D.2d at 175, 470 N.Y.S.2d
> at 789; and *Robfogel*, 67 Misc.2d at 624, 323 N.Y.S.2d at 382);
> *Aaron v. Agwilines, Inc.*, 75 F. Supp. 604 (S.D.N.Y. 1948). **It is
> also established that receiving authorization to do business in
> New York and designating the Secretary of State as an agent
> for service of process is sufficient to confer jurisdiction
> regardless of whether any business is actually conducted in the
> State.** *See Aaron*, 75 F. Supp. at 606; *Augsbury*, 97 A.D.2d at 176,
> 470 N.Y.S.2d at 789.

(emphasis added)   The significance and legal force of the registration process cannot be

overstated.   In *Laumann Manufacturing Corporation v. Castings USA, Inc.*, 913 F. Supp. 712

(E.D.N.Y., 1996), Judge Spatt found "[a] corporation that is licensed to do business in New York

meets the criteria of 'doing business' for the purposes of personal jurisdiction."   Similarly, in

*LeVine v. Isoserve, Inc.*, 70 Misc.2d 747, 334 N.Y.S.2d 796 (Sup.Ct.Albany Co. 1972), a foreign

corporation that was still licensed approximately six years after it ceased doing business in New

York remained amenable to general personal jurisdiction. The *LeVine* Court reasoned that in the absence of a revocation of consent by the corporation, the still extant certificate of authority on file with the New York Secretary of State conferred personal jurisdiction over the defendant.

The same is true in the Rule B context. "In evaluating the jurisdictional presence factor under Rule B, the Second Circuit and the majority of the district courts in this Circuit have focused principally upon that party's amenability to suit rather than the party's economic and physical activities in the district at issue." *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 182, 191 (upon revisiting the earlier decision in that case vacating the attachment, Judge Lynch upheld his holding that the defendant was "found" in the District by virtue of its registration with the New York Secretary of State); *Express Sea Transport Corp. v. Novel Commodities S.A.*, 06 cv 2404 (S.D.N.Y. May 4, 2006) (holding that a defendant is "found" in the jurisdictional sense if registered to do business in the state); *contra Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GMbH & Co.*, 409 F. Supp. 2d 427 (S.D.N.Y. 2006). Accordingly, merely by registering to do business in the State of New York, HBC has demonstrated that it has "sufficient" jurisdictional contacts with the forum, because the registration alone subjects HBC to the *in personam* jurisdiction of this Court.

MINMETALS, in its opposition brief, points to no authority which holds otherwise. Rather, Plaintiff cites to two cases inapplicable to the facts at present where the defendants were winding up their respective New York business activities, and the respective attachment applications were filed only after that intention was clearly manifested by significant acts, such as the closing of offices, the disconnecting of phone lines and the ceasing of all business activities in New York, and no continuing contacts with the state existed. In addition, in both cases, the Courts applied a "needs based" test to their jurisdictional analysis which has since

been overruled by the Second Circuit in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006).

In *Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.*, 476 F. Supp. 119 (S.D.N.Y. 1979), Judge Leval upheld an attachment entirely on the grounds that the defendant did not have a designated agent to receive service of process within the District, though found that the defendant could be "found" within the district for jurisdictional purposes. *See Centauri Shipping Ltd*, 528 F. Supp. 2d at 191. In that case, the defendant had been registered to do business in New York, maintained a New York office and conducted business activity in the state until three months prior to the filing of the attachment application when the defendant ceased all of its New York activity and closed its New York office and disconnected its telephone line. The only remaining nexus with New York was the defendant's continued corporate registration. Nonetheless, Judge Leval found that the defendant satisfied the jurisdictional prong of the *Seawind* test. Despite that the defendant's designated agent for service of process in the Southern District was no longer able to accept service, Judge Leval, recognizing the plaintiff's need for the security provided by the attachment in order to satisfy an eventual judgment in its favor, proceeded to uphold the attachment by a "bending of the Rule" so as to find that service on the Secretary of State in Albany, outside the district, satisfied the service prong of the *Seawind* and did not defeat the attachment. *Id.* at 123-24; *Centauri Shipping*, 528 F. Supp. 2d at 191.

Likewise, in *VTT Vulcan Petroleum, S.A. v. Langham-Hill Petroleum, Inc.*, 684 F. Supp. 389 (S.D.N.Y. 1988), Judge Leisure also upheld an attachment against a defendant which was winding down its business. Three weeks before the attachment application was filed, the defendant closed its New York office and conducted its last trade on the New York Mercantile

Exchange. The defendant, though, remained qualified to do business in the state and continued to have an agent authorized to accept service of process within the District. Also recognizing that the plaintiff "needed the security" and would otherwise be unlikely to recover an eventual judgment in its favor, Judge Leisure upheld the attachment. In particular, Judge Leisure focused on the fact that the subject defendant physically ended all continuous and systematic contact with the forum so as to leave no basis for the exercise of general jurisdiction. What affect the defendant's continued registration had on the issue of personal jurisdiction was not, however, considered by Judge Leisure in *VTT Vulcan*.

The narrow view of *Integrated* and *VTT Vulcan* intimated by MINMETALS is inaccurate.[2] Neither can be read in an intellectually honest way to stand for the proposition that a defendant is not subject to the personal jurisdiction of a forum where it is registered to do business. In any event, the Second Circuit in *Aqua Stoli* made clear that consideration of need for the security provided by an attachment was not a proper consideration in determining whether a defendant is found within the district. 460 F.3d at 466.

Notwithstanding, unlike the defendants in *Integrated* and *VTT Vulcan*, HBC has manifested no intention to cease any part of its business activities in New York. Indeed, contrary to MINMETALS' unsupportable contentions, HBC's New York contacts, which are continuous and systematic, only continue to grow and are evidenced by the fact that HBC derives an excess of 10 percent of its revenue from New York, actively solicits New York business and actively engages in substantial business activities in the state. *See* Declaration of Mathias Vogt, dated

---

[2] MINMETALS' further suggestion that the Second Circuit in *Aqua Stoli*, 460 F.3d 434, "relied upon and approved" the holdings of *Integrated* and *VTT Vulcan* also is not accurate. HBC respectfully submits that the *Aqua Stoli* Court referred to the decisions for the purpose of affirming the two-prong test used to determine whether a defendant is "found" in the district, and did not affirm the "factual holdings" as suggested by MINMETALS.

April 18, 2008, and Declaration of Thomas Boggild, dated October 28, 2005, annexed as Exhibit 11 to the Wanchoo Declaration.

Rather, the more recent and better reasoned decisions of Judges Lynch and Sullivan, together with the well-established rule applied under New York law, should be followed. *See Express Sea Transport Corp.*, 06 cv 2404 (S.D.N.Y. May 4, 2006); *Centauri Shipping Ltd.*, 528 F. Supp. 2d. 186.

MINMETALS argues that *Express Sea Transport* and *Centauri Shipping* misinterpret *Seawind*. This argument contradicts and misinterprets *Seawind*, and must fail. MINMETALS appears to claim that Judge Lynch in *Express Sea Transport* improperly interpreted *Seawind* as providing "support for the proposition that if there is specific jurisdiction over a defendant (i.e., the litigation arises out of a New York contract) then the defendant is 'found' irrespective of its commercial presence in the district." Pl. Response Brief at 9. This, however, is exactly what the *Seawind* Court held: "The contract in suit was made and allegedly breached by [the defendant] in New York. For such activities [the defendant] could clearly be made subject to suit in New York....Under these circumstances, we cannot say that [the district court's] determination that [the defendant] could be found within the district was clearly erroneous." 320 F.2d 580, 584 (2d Cir. 1963). Contrary to MINMETALS' suggestion, Judge Leisure's interpretation of *Seawind* in *VTT Vulcan* was also consistent with Judge Lynch's observation: "Seawind cannot be read to suggest that past contacts with the forum – apart from contacts which specifically relate to the subject matter of the litigation – cannot be used to show 'jurisdictional presence.'" 684 F. Supp. at 394. Other than its nonsensical argument that Judges Lynch and Sullivan misinterpreted the holding of *Seawind*, MINMETALS has advanced no authority which stands contrary to the

holding that a defendant registered with the New York Secretary of State to do business in the state is "found" within the district in the jurisdictional sense for purposes of Rule B.

MINMETALS also requests the Court to follow the misguided reasoning of Magistrate Judge Gorenstein in *Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GMbH & Co.*, 409 F. Supp. 2d 427 (S.D.N.Y. 2006), which has been expressly rejected by Judges Lynch and Sullivan in addition to the Second Circuit. In *Erne Shipping*, Magistrate Judge Gorenstein determined that HBC was not "found" in the district by virtue of its registration after engaging in a detailed consideration of whether such registration would serve the two purposes of Rule B: (1) to provide security for the plaintiff if a suit is successful, and (2) to assure the defendant's appearance in an action. After concluding that registration fails to satisfy both purposes, Magistrate Judge Gorenstein held that HBC was not "found" and upheld the attachment. Not only were Magistrate Judge Gorenstein's conclusions incorrect as highlighted in HBC's moving brief at p. 8, but the inquiry itself into whether the purposes of Rule B are satisfied upon a finding of personal jurisdiction over the defendant has been expressly overruled by the Second Circuit in *Aqua Stoli*. The *Aqua Stoli* Court overruled all district court cases, specifically citing the *Erne Shipping* case, which "followed a needs test, requiring the plaintiff to show that, even if the defendant cannot be found within the district, the attachment is necessary to obtain jurisdiction over a defendant or to secure a potential judgment." 460 F.3d at 466. Accordingly, *Erne Shipping* has no import here.

## CONCLUSION

For all the reasons contained in the motion papers, HBC respectfully requests that the Court issue an Order vacating the attachment, preclude MINMETALS from continuing to serve the PMAG issued herein on potential garnishees, and direct the release of all funds restrained pursuant to the PMAG, the parties to arbitrate their dispute in London and the stay of this matter pending the outcome of London arbitral proceedings.

Dated: New York, New York
      April 29, 2008

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
HBC Hamburg Bulk Carriers, GmbH & Co., KG

By: _____
      Michael E. Unger (MU 0045)
      80 Pine Street
      New York, NY 10005
      (212) 425-1900
      (212) 425-1901 fax